Argued at Pendleton May 6, affirmed June 4, 1918.

# FARMERS' STATE BANK OF NORTH POWDER v. FORSSTROM.*

(173 Pac. 935.)

**Bills and Notes—Accommodation Maker—Liability—Statute.**

1. Under Section 5862, L. O. L., one who signed a firm note as maker without receiving value therefor, to lend his name to the firm, is liable on the instrument to a bank holding for value, though the bank, when it took the note, knew he was only an accommodation party.

**Bills and Notes—Accommodation Party—Liability.**

2. One who signed a firm's note as maker, without receiving value and merely for accommodation, under Section 6023, L. O. L., is primarily liable on the note, and absolutely required to pay.

**Bills and Notes — Accommodation Party — Liability to Payee or Holder.**

3. One who sign's a firm's note for accommodation, whatever his position on the instrument as between himself and the firm, as to the payee or holder he does not stand as an indorser or one secondarily liable, and is not entitled so to be treated.

[As to rights and liabilities of makers and indorsers of accommodation paper, see note in 31 Am. St. Rep. 745.]

**Bills and Notes—Accommodation Maker—Statement by Payee.**

4. Statement by the payee of a note, to one who signed as maker for accommodation only, that he would be safe in signing the note did not change the legal effect of the transaction, which rendered him primarily liable to pay.

*On effect, under negotiable instrument law, of extension of time to principal, to release one who, on the face of the instrument, is primarily liable, but who is in fact surety, see notes in 10 L. R. A. (N. S.) 129 and 26 L. R. A. (N. S.) 99.

On admissibility of parol evidence that written instrument for the payment of money was executed in reliance upon parol promise that payment was subject to a condition not incorporated therein, see note in 18 L. R. A. (N. S.) 434.    REPORTER.

**Evidence—Parol Evidence Affecting Writing—Conditional Signature of Note.**

5. In an action on a note against one who signed for accommodation only, there being no fraud charged in its execution, it is not competent for the accommodation maker to allege or prove a contemporaneous parol agreement that under certain conditions he should not be called upon to pay, thereby varying and altering the legal effect of the instrument.

**Bills and Notes — Accommodation Maker — Extension of Time — Statute.**

6. An accommodation maker, under the Negotiable Instrument Act, Section 5834, L. O. L., et seq., is not relieved from payment of the note by the extension of the time of the payment thereof for a valuable consideration therefor without his consent, though the holder knows him to be only an accommodation maker, as he is primarily liable.

**Bills and Notes—Accommodation Maker—Duty to Pay.**

7. When a note became due, it was the duty of an accommodation maker, to protect his interests, to pay the note, and then look to his comakers for reimbursement.

**Bills and Notes—Accommodation Maker—Postponement of Right to Collect.**

8. The accommodation maker of a note cannot complain of the postponement of the payee's right to enforce collection of the instrument made without such maker's assent.

**Bills and Notes—Accommodation Maker—Duty.**

9. If one of the firm which executed a note with an accommodation maker when it was due arranged with the payee to liquidate the indebtedness on the next day, it was incumbent on the accommodation maker, to free himself from liability, to see that the payment was made.

**Bills and Notes — Accommodation Maker — Notice of Dishonor — Statute.**

10. An accommodation maker of a note is not entitled to notice of dishonor under Negotiable Instrument Act, Section 5834 et seq., L. O. L.

**Bills and Notes—Accommodation Maker—Discharge—Statute.**

11. An accommodation maker of a note, being primarily liable, by Section 5952, L. O. L., can claim discharge by an act which will discharge a simple contract for the payment of the money.

In Banc.

This is an action on a promissory note for $2,500—signed by the four defendants in favor of plaintiff. Defendant, James A. Pilcher, alone answered. The trial court sustained plaintiff's demurrer to the

amended answer, and defendant declining to further plead judgment was rendered against him from which he appeals.

The answering defendant, whom we will hereafter designate as defendant, alleged in effect that he signed the note at the request of the firm of Forsstrom-Pilcher Co. and of plaintiff as an accommodation maker without any consideration therefor, which plaintiff well knew; that plaintiff said that there was no danger in signing said note, that the firm of Forsstrom-Pilcher Co. would take care of said note and that plaintiff would see that they did at maturity; that when the note matured, plaintiff notified defendant that the same was due; that one of the firm "made arrangements with the plaintiff for the payment of the note, which arrangements were satisfactory to the plaintiff"; that plaintiff said nothing more to defendant about said note for several months when Forsstrom-Pilcher Co. were bankrupt; that during the period of time ending with the maturity of the note, Forsstrom-Pilcher Co. had on deposit in the plaintiff's bank moneys subject to check aggregating about $100,000, and plaintiff failed to pay the note out of such deposits; that after said note was given plaintiff discounted many notes of said firm; that plaintiff paid other unsecured indebtedness of said firm to itself and allowed the firm to withdraw the balance of the deposits, and to overdraw its account approximately $3,300, which was afterwards paid out of the deposits of the firm; that at the maturity of said note the said Forsstrom-Pilcher Co. was a going. solvent concern but in failing circumstances; that the plaintiff at all times knew the financial condition of said firm while the defendant did not; that defendant applied to plaintiff for information regarding the financial condition

of said firm and plaintiff, with the intention of misleading this defendant and inducing him to take no steps to protect himself against said firm, and in order to collect its unsecured indebtedness and overdrafts against said firm, knowingly gave this defendant false information as to the financial standing of said firm of Forsstrom-Pilcher Co., and stated to this defendant that the said firm was not indebted to plaintiff in any sums except the note sued on herein, when in fact the firm was indebted to plaintiff in large amounts, approximately $3,300 of which was overdrafts; that plaintiff, at the time, concealed the true financial condition of said firm from the defendant; that said defendant relied on said statements of plaintiff and believed them to be true and acted on the same by refraining to take steps to protect himself against said firm and was thereby induced to refrain from taking legal steps to protect himself or compel the payment of the note by said firm until after they became hopelessly insolvent, and was thereby induced to and did refrain from taking steps to obtain adequate security against the same; that the plaintiff took advantage of defendant's inaction resulting from plaintiff's conduct and collected the unsecured indebtedness and overdrafts from said firm to plaintiff and as soon as said firm became bankrupt plaintiff attempted to collect from this answering defendant and brought this action; that plaintiff without defendant's consent for a valuable consideration extended the time of payment of said note; that plaintiff on divers occasions, after the maturity of the note with reasonable diligence, could have paid the note out of the deposits of the firm in said bank, and should have collected the same.                                    Affirmed.

For appellant there was a brief over the names of *Messrs. Green & Rudolph* and *Mr. J. D. Slater,* with oral arguments by *Mr. R. J. Green* and *Mr. Slater.*

For respondent there was a brief over the names of *Mr. W. H. Packwood* and *Mr. John L. Rand,* with an oral argument by *Mr. Packwood.*

BEAN, J.—1, 2. The answer, the challenge to which was sustained, is lengthy and somewhat involved. It is denominated both a counterclaim and an estoppel. It is clear that the defendant does not recognize his primary liability on the note that he is absolutely required to pay the same in accordance with that part of the Negotiable Instrument Law contained in Section 6023, L. O. L. The defendant signed the note in suit as maker without receiving value therefor, for the purpose of lending his name to Forsstrom-Pilcher Co. He is therefore liable on the instrument to the plaintiff who is a holder for value, notwithstanding the bank, at the time of taking the note knew that he was only an accommodation party: Section 5862, L. O. L.

3–5. The defendant claims that he has been discharged in the same manner as a surety upon the note. Whatever may be his position on the instrument as between himself and the accommodated party, Forsstrom-Pilcher Co., as to the plaintiff, he does not stand as an indorser, or one secondarily liable on the note and is not entitled to be so treated by plaintiff. The defendant's pleading does not assert that the title of plaintiff to the note is defective. He avers that the bank officials informed him that he would be safe in signing the note. No fraud is claimed in the execution of the instrument, and the legal effect of such signing makes him primarily liable to pay the note.

Any statement by plaintiff to the contrary would not change the legal effect of the transaction: *Wicks* v. *Metcalf,* 83 Or. 687 (163 Pac. 434, 988, L. R. A. 1918A, 493). As there was no fraud charged in the execution of the note, it is not competent for defendant to allege or prove a contemporaneous parol agreement to the effect that under certain conditions defendant would not be called upon to pay the note and thereby vary and alter the legal effect of the instrument: *Portland Nat. Bank* v. *Scott,* 20 Or. 421 (26 Pac. 276); Stearns on Suretyship (2 ed.), § 110.

6. Whatever the law may have been prior to the enactment of the Negotiable Instrument Act in 1899, that law and the decisions thereunder are controlling as to all matters comprehended within its terms. It is settled that under the present law an accommodation maker is not relieved from the payment of his note by an extension of the time of payment thereof for a valuable consideration without his consent, even though the holder may know him to be only an accommodation maker. This is for the reason that a maker, even for accommodation, is by virtue of the statute primarily liable on the instrument: *Cellers* v. *Meachem,* 49 Or. 186 (89 Pac. 426, 13 Ann. Cas. 997, 10 L. R. A. (N. S.) 133); *Murphy* v. *Panter,* 62 Or. 522, 524 (125 Pac. 292); *Lumbermen's Nat. Bank* v *Campbell,* 61 Or. 123 (121 Pac. 427); *Hunter* v. *Harris,* 63 Or. 505, 506 (127 Pac. 786); *Vanderford* v. *Farmers & Mechanics' Nat. Bank,* 105 Md. 164 (66 Atl. 47, 10 L. R. A. (N. S.) 129); *First State Bank of Nortonville* v. *Williams,* 164 Ky. 143 (175 S. W. 10); *Bradley Engineering & Mfg. Co.* v. *Heyburn,* 56 Wash. 628 (106 Pac. 170, 134 Am. St. Rep. 1127); *Lane* v. *Hyder,* 163 Mo. App. 688 (147 S. W. 514); *Wolstenholme* v. *Smith,* 34 Utah, 300 (97 Pac. 329); 8 C. J., p. 276,

§ 431, and notes; 2 Daniel on Negotiable Instruments (6 ed.), § 1312, p. 1477; 3 R. C. L., § 353, p. 1137.

7–10. This rule has been announced in at least eight states, but a different rule appears to prevail in the State of Iowa: Crawford's Annotated Negotiable Instruments Law, p. 200.

Section 5952, L. O. L., provides:

"A negotiable instrument is discharged (1) by payment in due course or on behalf of the principal debtor; (2) by payment in due course by the party accommodated, where the instrument is made or accepted for accommodation; (3) by the intentional cancellation thereof by the holder; (4) by any other act which will discharge a simple contract for the payment of money; (5) when the principal debtor becomes the holder of the instrument at or before maturity in his own right."

This section enacts in definite terms that the instrument, and hence one primarily liable thereon, is discharged in one of five different ways. There is no mention therein of a discharge of an accommodation party by an extension of time, or by other acts such as would discharge a surety before the passage of the negotiable instrument law. It could then be shown that one signing a promissory note apparently as one of the makers was in reality a surety thereon, and as such surety was a favorite of the law, the payee was required to guard his interests with zealous care, although he was an accommodation maker. This in many instances worked a hardship upon the payee or holder of the instrument, and by the negotiable instrument act an accommodation party was taken out of the secondarily liable class, as it were, and classed with the makers of the note, and declared to be primarily liable on the instrument, and absolutely required to pay the same. It was therefore the duty

of the defendant, when the note became due in order to protect his interests, to pay the note and then look to his comakers. He is not in a position to complain because the payee did not promptly enforce the payment of the note. Neither can the defendant complain of the postponement of plaintiff's right to enforce the collection of the instrument made without the assent of the defendant. The plaintiff apparently in the ordinary course of business when the note matured, notified the defendant that it was due. This should have been sufficient. The assertion in the answer that one of the firm of Forsstrom-Pilcher Co. made satisfactory arrangements with plaintiff to pay the note in so far as it appears from the answer, may refer to an agreement on behalf of the firm to liquidate the indebtedness on the next day. If so, it was incumbent upon the defendant to see that this was done. This was his active duty according to the obligation which he had signed. It was not in compliance with his absolute promise to pay for him to rely upon the plaintiff to collect the note of the other defendants; in other words, he is not like an indorser of the note and has no right to demand the same treatment that an indorser could demand. He is not entitled to notice of dishonor.

The manner in which one who is secondarily liable on a note may be discharged is defined by Section 5953, L. O. L., which is as follows:

"A person secondarily liable on the instrument is discharged (1) by any act which discharges the instrument; (2) by the intentional cancellation of his signature by the holder; (3) by the discharge of a prior party; (4) by a valid tender of payment made by a prior party; (5) by a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved: (6) by any

agreement binding upon the holder to extend the time
of payment, or to postpone the holder's right to en-
force the instrument, unless made with the assent of
the party secondarily liable, or unless the right of re-
course against such party is expressly reserved.''

11. There is no mention made in Section 5952 of a
discharge of an accommodation party by an extension
of time, or by other acts which would release a party
secondarily liable. The word ''surety'' is not found
in the negotiable instrument law. Whatever force
may attach to the enumeration of ways in which the
instrument and consequently the parties primarily
liable might be discharged, if this section stood alone,
the inference arises from the omission of extension
of time, from such enumeration, and the inclusion
thereof, among the ways in which persons secondarily
liable, and other acts which would discharge persons
secondarily liable in Section 5953, is almost unques-
tionable that the legislature did not intend that per-
sons primarily liable should be discharged in any
other manner than as specified in Section 5952: 8 C. J.,
§ 431, p. 277, note 11; *Union Trust Co.* v. *McGinty,* 212
Mass. 205, 207 (98 N. E. 679, Ann. Cas. 1913C, 525,
notes). The defendant can claim a discharge by an
act which will discharge a simple contract for the pay-
ment of the money. His obligation is neither more,
nor less, and no different from that of his comaker
Therefore in order for the answer to be a defense to
the note, as it admits the defendant's liability thereon,
in the first instance, it must be equal to a complete
counterclaim, or constitute a perfect estoppel.

In our judgment, the answer does not support de-
fendant's defense. If he had been fully informed in
regard to the note, as he claims he should have been,
he asserts that he could have protected himself. To

what extent, whether to the amount of five cents or five hundred dollars does not appear from defendant's pleading. The answer does not constitute a counterclaim which should contain facts sufficient upon which to base an independent action: Section 73, L. O. L. He does not allege that by reason of misinformation given him by plaintiff, he was injured in any definite amount. Whether or not the matters referred to, if fully pleaded could be interposed as a counterclaim, it is not necessary to determine. The main thing complained of was that the bank permitted the firm of Forsstrom-Pilcher Co. to overdraw their account in about the sum of $3,300 during the time they were depositing about $100,000. This overdraft was afterwards balanced by a deposit. It was evidently not considered by the plaintiff as a regular indebtedness of the firm, but only a temporary balance. It is also alleged to the purport that Forsstrom-Pilcher Co. indorsed various notes to plaintiff and were liable as such indorsees, and thereby largely increased their indebtedness to plaintiff. But it is not shown that they were ever required to pay a dollar by reason of such indorsements. By the answer when fairly construed, the defendant complains because the plaintiff did not do those things which were incumbent upon the defendant himself to do,—that is to see that the note was paid. Defendant complains because he was not further notified by plaintiff to pay the note. How many notices he required is not stated. He failed to heed the one which was given him.

The answer of defendant does not state a defense to the note. There was no error in sustaining the demurrer. The judgment of the lower court is affirmed.                                        AFFIRMED.