MERCHANTS' NATIONAL BANK OF BILLINGS, RESPONDENT, *v.* SMITH ET AL., DEFENDANTS; LEE, APPELLANT.

(No. 4,285.)

(Submitted January 13, 1921. Decided March 7, 1921.)

[196 Pac. 523.]

*Bills and Notes — Uniform Negotiable Instruments Act — Construction—Defenses—Suretyship—Accommodation Maker —Liability—Holder in Due Course—Negotiation.*

Negotiable Instruments Act—Defenses—Suretyship.
    1. *Held,* that the Uniform Negotiable Instruments Act (Rev. Codes, secs. 5842–6037) supersedes the law of suretyship (*Id.*, secs. 5680–5693) as theretofore applicable to negotiable instruments, and that therefore one who signed a note as maker bound himself absolutely to pay, though in fact but an accommodation maker, and could not escape liability to a holder in due course under a plea of having been a surety only.

[59 Mont. 280.]

Same—Defense not Available.

2.  The defense that an extension of time has been granted to the principal debtor on a negotiable note without the consent of the surety is, under the above Act, available only to one secondarily liable thereon.

Same—Liability of Accommodation Maker.

3.  Defendant, an accommodation maker, was primarily liable on the note, though the payee bank, at the time it took the instrument, knew that he was lending his name to his comaker, and was not discharged from liability by the act of the bank in releasing mortgage security furnished by the latter, without his (defendant's) knowledge or consent.

Same—Scope of Act.

4.  The Uniform Negotiable Instruments Act deals with negotiable instruments only so long as they are in the hands of holders in due course; if in other hands, they are subject to the same defenses as if non-negotiable.

Same—Payee *Prima Facie* Holder in Due Course.

5.  *Held*, that the payee of a negotiable promissory note, in possession of it, is a *prima facie* holder in due course, within the meaning of the Uniform Negotiable Instruments Act, negotiation by indorsement and delivery not being necessary to constitute one a holder in due course.

*Appeal from District Court, Yellowstone County; A. C. Spencer, Judge.*

ACTION by the Merchants' National Bank of Billings against Thomas C. Smith and Walter O. Lee. From a judgment for plaintiff, defendant Lee appeals. Affirmed.

*Messrs. McIntire & Murphy,* for Appellant, submitted a brief; *Mr. H. G. McIntire* argued the cause orally.

That the apparent maker of a note may show by evidence *dehors* the note that he signed the same as an accommodation maker or surety and not otherwise is well settled. It is the statute, Rev. Codes, section 5681, and it is also expressly so decided in *Smith* v. *Freyler*, 4 Mont. 489, 47 Am. Rep. 358. 1 Pac. 214, and cases there cited; see, also, note on page 711 of *Keidan* v. *Winegar*, 20 L. R. A. 705; 3 Ruling Case Law, 1138.

---

2. Extension of time granted principal debtor as discharge of accommodation party under Negotiable Instruments Act, see notes in Ann. Cas. 1913C, 527; Ann. Cas. 1918A, 1103; Ann. Cas. 1918E, 806.

Effect, under negotiable instruments law, of extension of time to principal, to release one who, on the face of the instrument, is primarily liable, but who is in fact surety, see notes in 10 L. R. A. (n. s.) 129, and 26 L. R. A. (n. s.) 99.

Not only is the fact that defendant Lee signed the note in suit as surety *eo nomine* as set up in the answer, but the express words used in the statute (Rev. Codes, sec. 5680), to define what a surety is, are also there used, as are those to show that Lee was an accommodation maker. (Rev. Codes, sec. 5877.) Being then, as is admitted by the motion to strike, a surety, he is exonerated from liability—"To the extent to which he is prejudiced by any act of the creditor which would naturally prove injurious to the remedies of the surety or inconsistent with his rights, or which lessens his security." (Sec. 5686, subd. 2.) A most important one of these rights is the benefit of every security held by the creditor for the performance of the principal obligation. (Sec. 5692; 3 Ruling Case Law, 1279.) But despite these statutory provisions, it was contended in the lower court, and it was there held, that since the adoption of what is called the negotiable instruments law (Rev. Codes, sec. 5842 *et seq.*), these statutory provisions have been superseded, indeed have been repealed, at least by implication, in so far as a note like the one involved in the present suit is concerned. In the light of the cardinal rule of statutory construction that repeals by implication are not favored, and the further one that statutes *in pari materia* are to be construed together, and, if possible, harmonized, this contention seems to be far-fetched. In support of it there were cited the following cases, *viz.: Wolstenholme* v. *Smith,* 34 Utah, 300, 97 Pac. 329; *Bradley Engineering Co.* v. *Heyburn,* 56 Wash. 628, 134 Am. St. Rep. 1127, 106 Pac. 170; *Cellers* v. *Meachem,* 49 Or. 186, 13 Ann. Cas. 997, 10 L. R. A. (n. s.) 133, 89 Pac. 426; *Richards* v. *Market Ex. Bank,* 81 Ohio St. 348, 26 L. R. A. (n. s.) 99, 90 N. E. 1000. To which may be added: *Oklahoma etc. Bank* v. *Seaton* (Okl.), 170 Pac. 477; *First State Bank* v. *Lang,* 55 Mont. 146, 9 A. L. R. 1139, 174 Pac. 597. We have examined all of said cases, and in so far as the point involved in each of them is concerned, namely, that as to one primarily liable on a promissory note, the general law that an unauthorized extension of time will discharge a surety or accommodation maker, is abrogated by

Revised Codes, sections 5967, 5968, we have no quarrel. But no such point is involved in the present case. There is here no question of an extension of time, but the far weightier question, What effect on the obligation of a surety or accommodation maker—and they are the same—has the unauthorized release by the creditor of ample security left with the creditor by the principal debtor to pay the debt? Except as hereinafter stated, we have found no decisions applying the provisions of the negotiable instruments law to that state of affairs, although in *Bradley Eng. Co.* v. *Heyburn, supra,* we find a strong intimation that if that fact had appeared in the record (as it does here), it would have been held sufficient to discharge the defendant surety, as apparently does also *Turner* v. *Farmers' Bank* (Ky.), 58 S. W. 695. In this case the accommodation maker or surety was held not discharged, because it was not shown that the payee had notice of this fact; hence when, as here, the payee has such notice, the converse must be true. The instant case is one of first impression, and a solution of it must necessarily be reached independently of the cases above referred to.

We have said that an accommodation maker is a surety. (Eaton & Gilbert on Commercial Paper, 313, 314, 401; *Smith* v. *Freyler,* 4 Mont. 489, 47 Am. Rep. 358, 1 Pac. 214.) The liability of an accommodation maker as prescribed by Revised Codes, section 5877, is precisely that of a surety, *viz.,* that of being primarily liable on the note or obligation. This is the holding of all the courts, including this court. (*Cole Mfg. Co.* v. *Morton,* 24 Mont. 58, 60 Pac. 587.) And here we find the rationale of the cases above referred to for being primarily liable, whether an extension of time to the principal is given is a matter of indifference, for still the surety is liable. True, under the old law, an extension of time without his knowledge or consent would discharge the surety, but that rule it may be conceded is now abrogated by Revised Codes, sections 5967, 5968, just as is held in the cases above referred to. But this

is apparently the only part of the general law relating to principal and surety which seems to be abrogated.

Considering the negotiable instruments law, we observe that like all statutes containing several sections, the whole of the same must be considered to ascertain the legislative intent. Doing this we refer to Revised Codes, section 5848, which provides: "In any case not provided for in this act the rules of the law-merchant shall govern"; and to section 5697, subdivision 4, to the effect that a negotiable instrument is discharged: "4. By any other act which will discharge a simple contract for the payment of money." Now, if there is no provision in the new law providing for a discharge of an accommodation maker or surety because of a surrender by the creditor of security, and there is none, recourse can and must be had to the law-merchant. Probably the most fundamental rule of that law is as stated in Brandt on Suretyship and Guaranty, section 370, holding that the creditor holds the security in trust not only for himself but for the benefit of the accommodation maker or surety, and that if he fails to perform this trust or duty and releases the security without the consent of the accommodation maker or surety, the latter, *pro tanto,* at least, is discharged. (*Frazier* v. *First Nat. Bank,* 34 Ohio C. C. 508; *Tatum* v. *Commercial Bank & Tr. Co.,* L. R. A. 1916C, 767, 69 South. 508; and see the monographic footnote to 37 L. R. A. (n. s.) 700.)

There can be no question that as to other contracts than promissory notes, *e. g.,* bonds, leases, *etc.,* the principle obtains to the fullest extent. A well-considered case is that of *Kiessig* v. *Allspaugh,* 91 Cal. 231, 13 L. R. A. 418, 27 Pac. 655.

Revised Codes, section 5686, subdivision 2, provides that a surety is exonerated: "To the extent to which he is prejudiced by any act of the creditor which would naturally prove injurious to the remedies of the surety or inconsistent with his rights, or which lessens his security." One of these remedies is the right of subrogation to the securities held by the creditor, which are held in trust for the benefit of the surety, the release

of which would naturally prove injurious to the surety, inconsistent with his rights, and which lessens his security.

A very illuminating case on this subject is that of *Frazier* v. *First National Bank,* 34 Ohio C. C. 508. There the negotiable instrument law of Ohio, which is identical with that of Montana, was construed on facts similar to those in the present . case, and the leading case of *Richards* v. *Market Exchange Bank,* 81 Ohio St. 348, 26 L. R. A. (n. s.) 99, 90 N. E. 1000, was held not applicable.

*Messrs. Collins, Campbell & Wood,* for Respondent, submitted a brief; *Mr. Sterling M. Wood,* argued the cause orally.

The principal contention of the respondent upon this appeal may be briefly stated as follows: That under the negotiable instruments law, as contained in section 5842 *et seq.,* Revised Codes, the law applicable to a principal and his surety as set forth in previous sections of the Code, and particularly in those sections of the surety law cited by appellant, has no application where, as in the case at bar, the payee in a negotiable promissory note seeks to enforce the instrument, according to its terms, as against an accommodation maker thereon; and this for the reason, first, that no relation of surety, where the facts involved are as here stated, is contemplated by the negotiable instruments law, and, second, because an accommodation maker is "primarily" liable under this law, and hence precluded and estopped by its provisions from attempting to show, as against a payee, that he is merely a surety. As a result of this last stated principle, respondent's further conclusion is that the appellant, Lee, as an accommodation maker, can only discharge his liability on the paper in suit by bringing himself within one or more of the provisions of section 5967, which section applies to the discharge of persons "primarily" liable on negotiable paper, and which contains all the law relating to the discharge of such persons from liability. We cite, upon proposition of law that nothing which would have discharged an accommodation maker or surety before the passage of the

Negotiable Instruments Act, by reason of the fact alone that he was a surety, will discharge him under the law as it now exists since the passage of the uniform negotiabe instruments law, the following cases: *National Citizens' Bank* v. *Toplitz,* 81 App. Div. 593, 81 N. Y. Supp. 422; *Cowan* v. *Ramsey,* 15 Ariz. 533, 140 Pac. 501; *First Saving Bank & Trust Co.* v. *Flournoy,* 24 N. M. 256, 171 Pac. 793; *Bertin* v. *Mattison,* 80 Or. 354, 5 A. L. R. 590, 157 Pac. 153; *Davis* v. *First Nat. Bank of Albany,* 86 Or. 474, 168 Pac. 929. See also, *First State Bank* v. *Lang,* 55 Mont. 146, 9 A. L. R. 1139, 174 Pac. 597; *Vanderford* v. *Farmers' etc. Bank,* 105 Md. 164, 10 L. R. A. (n. s.) 129, 66 Atl. 47; *Lane* v. *Hyder,* 163 Mo. App. 688, 147 S. W. 514; *Night & Day Bank* v. *Rosenbaum,* 191 Mo. App. 559, 177 S. W. 693; *Cellers* v. *Meachem,* 49 Or. 186, 13 Ann. Cas. 997, 10 L. R. A. (n. s.) 133, 89 Pac. 426; *First Nat. Bank* v. *Meyer,* 30 N. D. 388, 152 N. W. 657; *Richards* v. *Market Ex. Bank,* 81 Ohio St. 348, 26 L. R. A. (n. s.) 99, 90 N. E. 1000; *Graham* v. *Shephard,* 136 Tenn. 418, 189 S. W. 867.

In practically all of these last cited cases the defense is asserted, where action upon negotiable paper has been instituted, that an accommodation maker upon the paper has been discharged because of an extension of time for payment given to the maker other than the one who signed for accommodation; and the courts hold, with perfect uniformity, that, under the negotiable instruments law, an accommodation maker is primarily liable on the paper, and that he can procure his discharge only by bringing himself within one or more of the terms and provisions of that section of the negotiable instrument law found in our Code as section 5967, which contains all the law relating to the discharge of one primarily liable. The several courts held, in so many words, that extension of time of payment to one maker does not discharge his comaker who is an accommodation maker. Hence, all of the decisions of the courts covered by the list of citations hereinabove made necessarily embody this conclusion, *viz.,* that the statute relating to the discharge of persons primarily liable upon negotiable instruments

(sec. 5967, Rev. Codes) contains nothing which can be construed as discharging an accommodation maker where an extension of time for payment is granted to the person for whose accommodation he signed. Paragraph 4 of this discharge statute provides that a negotiable instrument is discharged "by any other act which will discharge a simple contract for the payment of money." Under all definitions, the contract between a principal and surety is a simple contract; and it is further settled law that in such classes of simple contracts a surety is discharged by extension of time for payment given to the principal debtor. The cases cited in appellant's brief establish this rule of discharge. Therefore, in spite of the fact that the contract of principal and surety is a simple contract under the law, this court and all of the other courts whose decisions are cited have necessarily held in these decisions that none of the rules of law applicable to the simple contract relation of principal and surety have any application as between an accommodation maker and the holder of his negotiable paper in so far as the discharge of such paper is concerned. In other words, the courts must be considered to have necessarily held, as incidental to their stated conclusions, that no relation of principal and surety is contemplated by the negotiable instruments law, and, further, that one primarily liable upon negotiable paper engages to pay it according to its tenor, and not otherwise; and thus all of the decisions from all of the jurisdictions which are cited in this brief are found to be in complete accord, and a uniform construction is given to this Uniform Act.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was brought to recover the balance due upon the following promissory note:

"Billings, Montana, May 7, 1917.

"Four months after date without grace, for value received, I promise to pay to the order of the Merchants' National Bank

of Billings, Montana, thirty-five hundred dollars with interest from date at the rate of ten per cent per annum until paid, with an attorney's fee in case payment shall not be made at maturity. Presentment for payment, protest and notice of dishonor waived by each maker, indorser and guarantor hereof.

"THOS. C. SMITH.

"W. O. LEE."

The complaint is in the usual form. By his separate answer, defendant Lee admitted the execution and delivery of the note and the payments made thereon by Smith, and by way of special defense set forth that he signed the note for the accommodation of Smith, and received no part of the consideration; that these facts were known to the bank; that on May 8, Smith made, executed and delivered to the bank a chattel mortgage upon property of a value equal to or greater than the amount of the note; that thereafter, and before the commencement of this action, the bank without his knowledge or consent released and discharged the mortgage, thereby depriving him of all benefit thereunder, and that immediately after the surrender of the security Smith became and ever since has been insolvent. Upon motion of plaintiff this entire special defense was stricken out, and judgment rendered and entered according to the prayer of the complaint. From that judgment defendant Lee appealed.

1. Appellant contends that, though upon the face of the note
[1] he is a maker, he is in fact a surety, and invokes the provisions of sections 5680–5693, Revised Codes, which define the rights and liabilities of a surety. If these provisions are available to him, the portion of his answer stricken out states a complete defense, and the trial court erred in its ruling.

The sections enumerated, adopted in Montana in 1895, but crystallized and arranged in convenient form certain rules of the law-merchant applicable to suretyship, and it cannot be controverted that under the common law of commercial paper the release of security pledged by the principal debtor operated to discharge the surety, at least to the extent of the value of the

released property. (1 Brandt on Suretyship & Guaranty, 3d ed., secs. 480–483.)

In 1903 this state adopted the Uniform Negotiable Instruments Act (Laws 1903, Chap. 121; secs. 5842–6037, Rev. Codes), modeled after the English Bill of Exchange Act of 1882. The same statute has been enacted in forty-three states of the Union, in Alaska, District of Columbia, Hawaii, the Philippines, and in most of the Canadian provinces. It was proposed by commissioners from the several states and was designed to secure uniformity in the text of the law, and through that agency uniformity in construction, and to remove the uncertainty which arose from diverse judicial decisions among the states, to the end that this "currency of commerce" might pass through the channels of trade, unembarrassed by the conflicts of laws. It may not comprehend all the rules applicable to negotiable instruments, but, so far as it does undertake to declare the law, its provisions are exclusive.

It could not be contended that the Act repeals the suretyship statute above. Sections 5680–5693 are in full force and effect so far as they operate upon non-negotiable instruments; but it is our judgment that the Act superseded those sections so far as the law of negotiable instruments is concerned. Nowhere in the Uniform Negotiable Instruments Act is the term "surety" mentioned, and its provisions are so inconsistent with the law of suretyship that they cannot be reconciled. For example: By section 5688 a surety may require the creditor first to proceed against the principal debtor under penalty of a release of the surety. By section 192 of the Act (Rev. Codes, sec. 5844) all persons liable on a negotiable instrument are comprehended in one or the other of two classes. That section provides: "The person primarily liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are secondarily liable." In other words, the surety at common law is by the terms of this Act made primarily liable, and by signing as a maker he binds

himself absolutely to pay.    (8 C. J. 73, 74; *Edmonston* v. *As-cough,* 43 Colo. 55, 95 Pac. 313.)    Again, at common law an
[2]    extension of time to the principal debtor without the consent of the surety released the surety (1 Brandt on Suretyship
& Guaranty, Chap. 14; 8 C. J. 445; 32 Cyc. 191); but that defense is now available, only to one secondarily liable (sec. 120
[Rev. Codes, sec. 5968]; 8 C. J. 447; *First State Bank of Hilger* v. *Lang,* 55 Mont. 146, 9 A. L. R. 1139, 174 Pac. 597).

Furthermore, suretyship furnished one of the most vexatious sources of litigation at common law, and was a subject upon which judicial decisions were most at variance.    To confirm this statement one has but to review Chapters 3 to 18, 1 Brandt on Suretyship & Guaranty.    If the primary purpose of this Act was to secure uniformity in the law of negotiable instruments, as is generally conceded to be the fact, it is inconceivable that the failure of the Act to mention suretyship is to be charged up merely as a *casus omissus.*    It seems clear to us that it was the purpose of the legislation to supersede the law of suretyship as theretofore applied to negotiable instruments, and to substitute therefor the law as declared by the Act itself, and this is the view expressed by the courts quite generally. (*Union Trust Co.* v. *McGinty,* 212 Mass. 205, Ann. Cas. 1913C, 525, 98 N. E. 679; *Jamesson* v. *Citizens' Nat. Bank,* 130 Md. 75, Ann. Cas. 1918A, 1097, 99 Atl. 994; *Bradley E. & M. Co.* v. *Heyburn,* 56 Wash. 628, 134 Am. St. Rep. 1127, 106 Pac. 170; *Oklahoma etc. Bank* v. *Seaton* (Okl.), 170 Pac. 477; *Lumbermen's Nat. Bank* v. *Campbell,* 61 Or. 123, 121 Pac. 427; *Richards* v. *Market Ex. Bank,* 81 Ohio St. 348, 26 L. R. A. (n. s.) 99, 90 N. E. 1000.)

The defendant Lee is not a surety, so far as the bank is concerned, and he may not invoke the provisions of sections 5680–5693 above.

2. Section 191 (Rev. Codes, sec. 5843) defines a holder as
[3]    "the payee or indorsee of a bill or note, who is in possession of it."    The bank is therefore a holder, and, having parted with a valuable consideration for the note, is a holder

for value within the meaning of the same section and other provisions of the Act.

Lee signed the note without receiving value, and for the purpose of lending his name to Smith, and is an accommodation maker (sec. 29 [Rev. Codes, sec. 5877]), and since by the terms of the note he is absolutely required to pay it, he is a party primarily liable (sec. 192 [Rev. Codes, sec. 5844]).

Section 120 (Rev. Codes, sec. 5968) enumerates the several circumstances under any of which a party secondarily liable may be released. There is no express provision for the release of a party primarily liable, and for the obvious reason that none is necessary. Such a party is absolutely bound to pay in the first instance (sec. 192), and can be relieved only by a discharge of the instrument itself (*Farmers' State Bank* v. *Forsstrom*, 89 Or. 97, 173 Pac. 935).

Section 119 (Rev. Codes, section 5967) provides: "A negotiable instrument is discharged: 1. By payment in due course by or on behalf of the principal debtor; 2. By payment in due course by the party accommodated, where the instrument is made or accepted for accommodation; 3. By the intentional cancellation thereof by the holder; 4. By any other act which will discharge a simple contract for the payment of money; 5. When the principal debtor becomes the holder of the instrument at or after maturity in his own right." But appellant contends that he is released by virtue of the provisions of subdivision 4 of this section, for if the note in question were a simple contract, the release of the securities by the bank would operate to discharge him. Section 119 relates only to the discharge of the instrument and not to the discharge of the parties, though the greater includes the less, and it never was the law that the release of a surety or accommodation maker discharged the instrument itself. (*Richards* v. *Bank,* above.)

The meaning of subdivision 4 is apparent. Anything which will discharge, that is, destroy, a simple contract—literally blot it out of existence in contemplation of law—will discharge an

accommodation maker, but it will also release the principal debtor, and all other parties liable thereon.

And the fact that Lee signed the note without receiving any part of the consideration, and for the purpose only of lending his name to Smith, does not alter his situation. He is liable notwithstanding the bank, at the time it took the note, knew him to be only an accommodation party. (Sec. 29.) In other words, the fact that he is an accommodation maker gives rise to a duty on his part to the holder for value, no greater, or less or different, than that imposed upon a maker who received value. (*Wolstenholme* v. *Smith,* 34 Utah, 300, 97 Pac. 329; *Union Trust Co.* v. *McGinty,* above; *Farmers' State Bank* v. *Forsstrom,* above.)

3. By its very terms the Act now under review has to do **[4]** only with negotiable instruments (*United States Nat. Bank* v. *Shupak,* 54 Mont. 542, 172 Pac. 324), and with such instruments only so long as they are in the hands of holders in due course. Section 58 (Rev. Codes, sec. 5906) declares: "In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable." If the bank is not a holder in due course, this case is not within the purview of the Act, and its rights and Lee's liability are to be determined by the law applicable to simple contracts generally, under which the defense of suretyship may be maintained.

Is the bank, the payee of the note in possession of it, *prima* **[5]** *facie* a holder in due course? Section 52 of the Act (Rev. Codes, sec. 5900) provides: "A holder in due course is a holder who has taken the instrument under the following conditions: 1. That it is complete and regular upon its face; 2. That he became the holder of it before it was overdue, and without notice that it has been previously dishonored, if such was the fact; 3. That he took it in good faith and for value; 4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

In submitting the draft of the Uniform Negotiable Instruments Act, the chairman of the committee in charge of it declared: "The statute proposed will be found clear, concise, and thorough." It may be thorough, and it may be conceded that much is expressed in few words, but the fact that courts of high repute have reached diametrically opposite conclusions as to the meaning of several sections suggests that the language is not as clear as its proponents believed it to be.

The phrase "holder in due course" appears in several sections of the Act, and the decisions upon the proper meaning to be given it are in hopeless conflict. Section 191 (Rev. Codes, sec. 5843) defines a "holder" of a note payable to order, as the payee or indorsee who is in possession of it. It follows, therefore, that the plaintiff bank is the holder. Section 59 of the Act (Rev. Codes, sec. 5907) provides: "Every holder is deemed *prima facie* to be a holder in due course." From this section the presumption arises that the plaintiff bank is a holder in due course, but the presumption is a disputable one, and the *prima facie* case made by the presentation of the note may be overcome, and the burden is upon defendant Lee, unless it appears that he is relieved by plaintiff's own pleading. How may he sustain this burden? Manifestly, by showing the absence of any one of the conditions enumerated in section 52, and not otherwise.

He does not contend that the note is not complete and regular upon its face, or that the bank did not become the holder before maturity and before it was dishonored, or that it did not take the note in good faith and for value. Assuming that the proper construction of subdivision 4 of section 52 compels the conclusion that to constitute the bank a holder in due course the note in question must have been "negotiated" to it, does it follow that by alleging that it is the payee in possession of the note it has pleaded itself out of court? Or, stating the question more succinctly: May the payee in possession of a note qualify as a holder in due course? If negotiation to the holder is indispensable in order to constitute him a holder in due

course, and if section 30 of the Act means that negotiation of a note payable to order can be effected only by indorsement and delivery, it follows that plaintiff bank is not a holder in due course, and the fact appears affirmatively from the face of the complaint.

In the following cases it is held, in effect, that negotiation to the holder is necessary to constitute him a holder in due course, and that delivery by the maker to the payee is not "negotiation" within the meaning of that term as employed in the Negotiable Instruments Act: *Vander Ploeg* v. *Van Zuuk,* 135 Iowa, 350, 124 Am. St. Rep. 275, 13 L. R. A. (n. s.) 490, 112 N. W. 807; *Builders' L. & C. Co.* v. *Weimer,* 170 Iowa, 444, Ann. Cas. 1917C, 1174, 151 N. W. 100; *St. Charles Savings Bank* v. *Edwards,* 243 Mo. 553, 147 S. W. 978; *Southern Nat. Life Realty Corp.* v. *People's Bank,* 178 Ky. 80, 198 S. W. 543; *Wood* v. *Finley,* 153 N. C. 497, 69 S. E. 502.

In *Lewis* v. *Clay,* 67 L. J. Q. B. (n. s.) 224, the English court, in considering a section of the Bill of Exchange Act, substantially identical with our section 14 (Rev. Codes, sec. 5862), declared that a payee is not a holder in due course, and said: "A holder in due course is a person to whom after its completion by and as between the immediate parties, the bill or note has been negotiated." In the later case of *Herdman* v. *Wheeler,* 5 B. R. C. 651, the pronouncement in *Lewis* v. *Clay* was declared to be *dictum,* as it was manifestly.

In *Bowles Co.* v. *Clark,* 59 Wash. 336, 31 L. R. A. (n. s.) 613, 109 Pac. 812, the court held that plaintiff in that action, payee of the check, was not a holder in due course, but did not discuss the provisions of the Negotiable Instruments Act.

In *Long* v. *Shafer,* 185 Mo. App. 641, 171 S. W. 690, the court held that delivery of a note by the maker to the payee did not constitute negotiation, and therefore the payee was not a holder in due course. When the case was certified to the supreme court, the decision of the appellate court was affirmed, but upon an entirely different theory. (*Long* v. *Mason,* 273 Mo. 266, 200 S. W. 1062.)

In *Bank of Gresham* v. *Walch,* 76 Or. 272, 147 Pac. 534, it was held that the payee of a note is not a holder in due course within the meaning of these terms used in section 28 of the Act. There was not any discussion of the subject, and no reason assigned for the conclusion.

So far as our investigation has gone, these are the only decided cases which might, in principle, deny to this plaintiff the right to recover. *National Bank* v. *Farmers' Bank,* 87 Neb. 841, 128 N. W. 522, and *Aurora State Bank* v. *Haynes-Eames Elev. Co.,* 88 Neb. 187, 129 N. W. 279, are cited by some authorities as bearing upon the question here involved, but in our judgment neither is in point.

Counsel for appellant cite and rely upon the decision in *Frazier* v. *First Nat. Bank,* 34 Ohio C. C. 508. The action was by the bank upon two notes. The statement of the case is that "each of these notes was *indorsed* by H. E. Frazier," and the question arose upon the sufficiency of Frazier's answer. Since Frazier was an accommodation indorser and only secondarily liable under section 192 of the Act, the case has no application here.

4. At common law (law-merchant) it was held generally that a payee in possession of a bill or note payable to order may be a holder in due course. (*Watson* v. *Russell,* 3 B. & S. 34, 122 Eng. Reprint, 14; affirmed, 5 B. & S. 968, 122 Eng. Reprint, 1090; *Armstrong* v. *Bank,* 133 U. S. 433, 33 L. Ed. 747, 10 Sup. Ct. Rep. 450 [see, also, Rose's U. S. Notes]; *J. G. Brill Co.* v. *Norton,* 189 Mass. 431, 2 L. R. A. (n. s.) 525, 75 N. E. 1090; *First Nat. Bank* v. *Union Trust Co.,* 158 Mich. 94, 133 Am. St. Rep. 362, 122 N. W. 547; *Jordan* v. *Jordan,* 10 Lea (Tenn.), 124, 43 Am. Rep. 294; *Lookout Bank* v. *Aull,* 93 Tenn. 645, 42 Am. St. Rep. 934, 27 S. W. 1014; *Brown* v. *Rowan,* 91 Misc. Rep. 220, 154 N. Y. Supp. 1098, and cases cited.) But if, under the Negotiable Instruments Act, negotiation to the holder is indispensable to constitute him a holder in due course, and if negotiation of a promissory note payable to order can be effected only by indorsement and delivery, it fol-

lows that the payee can never be a holder in due course, and that his common-law rights have been greatly curtailed by this Act.

It is inconceivable that it was the purpose of the Act to work a change in the law so radical without an express declaration to that effect, and we ought not to draw the inference that such a result was contemplated unless compelled by the weightiest considerations. Section 30 of the Act (Rev. Codes, sec. 5878) provides: "An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer it is negotiated by delivery; if payable to order it is negotiated by the indorsement of the holder completed by delivery." It is upon the last sentence of the section that the courts which hold that the change has been wrought base their conclusions—conclusions which can be justified only by assuming that the last sentence is a part of the definition of the term "negotiated," but that it is not seems to us certain.

The first sentence of the section is complete in itself, and expresses the meaning of the term "negotiated" as it was used in the law-merchant. In *Baring* v. *Lyman*, 1 Story, 416, Fed. Cas. No. 983, Justice Story of the supreme court of the United States, at circuit, said: "A bill [of exchange] is properly said to be negotiated when it has passed into the hands of the payee or indorsee, or other holder for value, who thereby acquires title thereto." (*Liberty Trust Co.* v. *Tilton*, 217 Mass. 462, L. R. A. 1915B, 144, 105 N. E. 605; *Boston S. & I. Co.* v. *Steuer*, 183 Mass. 140, 97 Am. St. Rep. 426, 66 N. E. 646.) It is also the common and popular signification of the term. (Webster's International Dictionary; Anderson's Law Dictionary.) The fact that it is generally employed to characterize the act of transferring a bill or note from one holder to another does not limit its meaning to such a transfer.

The last sentence of section 30 was manifestly intended only to describe the method by which one holder may pass title to another, but was not intended to define the exclusive methods

by which negotiation can be accomplished. In other words, it was never intended by the Act to place the payee in a worse position than he was before it was adopted. (*Liberty Trust Co.* v. *Tilton,* above; *Brown* v. *Rowan,* above; Fletcher Moulton, L. J., in *Lloyd's Bank* v. *Cooke,* 1 K. B. 794, 5 B. R. C. 666; *Ex parte Goldberg & Lewis,* 191 Ala. 356, L. R. A. 1915F, 1157, 67 South. 839; *McDonough* v. *Cook,* 19 Ontario, 267; *Knetchel Furniture Co.* v. *Ideal House Furnishers, Ltd.,* 19 Manitoba, 652.) Indeed, the supreme court of Iowa, in *Vander Ploeg* v. *Van Zuuk* above said: "We do not mean to say that in no case can the person named as payee in a negotiable instrument be the holder thereof 'in due course' [giving an example of a supposititious case in which the payee would be a holder in due course at common law]. There is no reason to think the situation of the parties to such a transaction is different under the Act." (The Uniform Negotiable Instruments Act.) And our conclusion is fortified by other provisions of the Act. The holder of a bill or note payable to order is the payee or indorsee in possession of it. (Sec. 191.) "Every holder is deemed *prima facie* to be a holder in due course." (Sec. 59.) Substituting for the term "holder" in section 59 its equivalent as defined by section 191, and section 59 would then read: "Every payee in possession of a note is *prima facie* a holder thereof in due course"—a conclusion which is impossible if negotiation by indorsement and delivery is necessary to constitute one a holder in due course.

It seems necessary, in order to harmonize the several provisions of the Act, to hold that the complete definition of "negotiated" is contained in the first sentence of section 30, and that a payee who has taken a note, complete and regular upon its face, before it was overdue, and for value and in good faith, may qualify as a holder in due course, and *prima facie* is such.

There is nothing in the complaint herein to negative the presumption that the bank is a holder in due course, and the fact that Lee is an accommodation maker does not overcome the presumption.

The allegations stricken from the answer do not constitute a defense, and the trial court properly so ruled.

The judgment is affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Associate Justices Reynolds, Cooper and Galen concur.

