BLACK HAWK NATIONAL BANK, Appellee, v. MONARCH COMPANY et al., Appellants.

**ESTOPPEL:** Equitable Estoppel—Ultra Vires in re Corporate Accommodation Note. A corporation is not estopped to plead *ultra vires* in becoming the maker of an accommodation promissory note, from the fact that its officers knew that the payee (who was not the accommodated party) was making advances to the party actually accommodated, when the payee knew (1) that the note was an accommodation solely to the party receiving the advances, and (2) that the note was not executed in conformity with the authority which the corporation had granted to its officers.

**BILLS AND NOTES:** Holdership in Due Course—Payee As Holder in Due Course. Conceding, arguendo, that the payee of a promissory note might, under some circumstances, be a holder in due course, yet he cannot have such standing when he knew, when he acquired the note, that it had not been executed by the proper officers of the corporation maker. (See Book of Anno., Vol. 1, Sec. 9512, Anno. 1; Sec. 9519, Anno. 1-a1.)

Headnote 1:  14a C. J. p. 329.   Headnote 2:  8 C. J. p. 469.

*Appeal from Black Hawk District Court.*—GEORGE W. WOOD, Judge.

FEBRUARY 9, 1926.

ACTION at law by plaintiff, as payee of a negotiable promissory note, against the Monarch Company, as maker, and against the Webster City Savings Bank on its written guaranty securing the obligation evidenced by the note. The opinion states the issuable facts. Cause was tried to the court, the jury having been waived by the consent of all parties. Verdict for the plaintiff, and from the judgment entered thereon the defendants

appeal.—*Affirmed* as to the Webster City Savings Bank, and as to the Monarch Company, *reversed*.

*Burnstedt & Hemingway,* for appellant The Monarch Company.

No appearance for appellant Webster City Savings Bank.

*P. H. Paulsen* and *Mears & Lovejoy,* for appellee.

DE GRAFF, C. J.—Two defendants are involved in this action: (1) the Webster City Savings Bank, on a liability predicated on its written guaranty to the plaintiff, securing an obli-

1. ESTOPPEL: equitable estoppel: *ultra vires* in re corporate accommodation note.

gation evidenced by a negotiable promissory note payable to plaintiff; and (2) the Monarch Company, a corporation, the alleged maker of said note. The record discloses that, subsequently to the entry of judgment, nothing was done by the defendant Webster City Savings Bank except to perfect its appeal to this court. Its appearance is not entered here. No brief points or propositions are made, and no argument has been filed. Under these circumstances, this court will not search the record to discover reversible error, and we shall consider the appeal abandoned. The judgment entered by the trial court as to the Webster City Savings Bank is affirmed.

We turn, therefore, to the propositions involved on the appeal of the defendant the Monarch Company. Two issues presented by plaintiff, on whom rests the burden, are determinative of this cause as to this defendant: (1) estoppel, and (2) due-course holdership. That the evidence presently recited may be understood and applied in the light of the pleadings, it is necessary to state the issues in some detail.

The plaintiff, as payee and in possession of a negotiable promissory note, upon profert of the instrument was entitled to rest its case as against the defendant Monarch Company. *Marshak v. Fontana,* 195 Iowa 511. It was a temporary rest, however, by reason of the allegations in the answer of this defendant and the reply thereto.

What are the issues? The defendant-maker of the note in suit in answer denies that it had any knowledge or information

of the execution and delivery of said note to the plaintiff, and asserts that nothing of value was received by it for the alleged note, and that, so far as the maker is concerned, there was a total failure of consideration; that no one on behalf of the defendant-maker, a corporation, had authority to execute and deliver such promissory note; that said note was not authorized by the board of directors of said defendant corporation; and that, if said note was executed and delivered, it was done without knowledge on the part of the board of directors, and contrary to and in violation of authority given to any person purporting to act with such authority; that, if said note was executed and delivered to the plaintiff, bearing the name of the defendant, as maker, it was not for the benefit of the defendant, but was merely an accommodation, to enable some person or corporation to obtain credit; and that such execution and delivery were therefore *ultra vires*, illegal, and void.

By way of reply, plaintiff states that the defendant-maker by its articles of incorporation had authority to borrow money and issue its promissory notes in the name of the corporation, and that the said note is a negotiable instrument; that by the act of issuing said note the defendant-maker stated and represented that the same was issued for a legitimate purpose of its incorporation, and as defined by its articles; that the plaintiff took and accepted said note in good faith, for a valuable consideration, in the regular course of business, and without any notice of any infirmity in the instrument or defect in the title of the person negotiating it; and further, that, by reason of the pleaded facts, the defendant-maker is estopped to claim that for any reason it is not liable on said note, and is estopped from making any defense thereto. It is also averred that said defendant accepted the benefits of the transaction and received the money represented by the note in suit, thereby ratifying the transaction, and is now estopped to deny the authority of its officers to execute and deliver said promissory note.

What are the facts? The Monarch Company is a manufacturing corporation, with its principal place of business at Webster City, Iowa. The plaintiff, Black Hawk National Bank, is a national bank doing a general banking business at Waterloo, Iowa.

It appears that, on or about August 9, 1921, the Webster City Savings Bank was hard pressed financially, and was desirous that the plaintiff should furnish it funds. The matter was discussed between the two banks, and the cashier of the savings bank was told by the cashier of the plaintiff national bank that the latter was in a position to meet the request for a loan, provided that the savings bank could furnish commercial paper that was subject to rediscount at the Federal Reserve Bank. The Monarch Company note, as eligible paper, was discussed, and the cashier of the savings bank was told that such a note would be acceptable. The cashier was also told at this time that, as the savings bank was not a member of the Federal Reserve Bank, in order that plaintiff could handle the note it would be necessary to have the Monarch Company make the Black Hawk National Bank the payee, and that the savings bank should give a separate written guaranty for the payment of the note, to cover the rediscount proposition.

The savings bank subsequently sent a Monarch Company note payable directly to plaintiff, for $10,000, together with a copy of a resolution purported to be signed by the Monarch Company, which recited that:

"The president and secretary of the Monarch Company be and they are hereby authorized to borrow and execute notes for and in behalf of said corporation, not to exceed the sum of $45,000."

Upon the receipt of these papers, the plaintiff placed $10,000 to the credit of the savings bank, which sum was fraudulently checked out by its (savings bank's) cashier. At this time the written guaranty was sent, as requested.

The Monarch Company note was sent by the plaintiff to the Federal Reserve Bank, and rediscounted. Upon its maturity, the note was forwarded for collection; whereupon the cashier of the savings bank wrote to the plaintiff, requesting that the latter accept a renewal of the original note. This was agreeable, and a new note for $10,000 was sent by the savings bank to the plaintiff, and the renewal was credited to the account of the savings bank. Several renewals were, in fact, subsequently made, and the note in suit is the last renewal. This note was signed by the Monarch Company by E. S. Johnson,

president. The record does not show satisfactorily how the prior notes were signed. None of them are in evidence. The maturity tickler of the plaintiff-bank shows that the renewal note, Exhibit N, was signed "The Monarch Company, by E. J. Rood, secretary, and E. S. Johnson, president;" but there is no proof that the secretary did, in fact, sign any note, and there is a denial that the secretary did, in fact, sign. The cashier of the plaintiff-bank testified that it is his recollection that some of the renewal notes were signed by the president and the secretary of the Monarch Company. The plaintiff demands judgment on the note in evidence, and must necessarily rely thereon.

The only testimony in relation to the transaction between the Monarch Company and the Webster City Savings Bank was given by E. S. Johnson, its president. He testified that the cashier of the savings bank acquainted him with the fact that the bank was financially embarrassed, and that some of the accounts with its correspondents were overdrawn. He informed the cashier that, as a matter of courtesy and friendly relationship between his company and the bank, he was willing to do anything he could, and that he felt under obligation to the bank in many ways. Johnson was then told by the cashier that the bank could obtain financial assistance through the Black Hawk National, if the note of the Monarch Company could be placed with the plaintiff, and that it was understood between them that it was an accommodation proposition to the savings bank. He further testified that he had known for quite a while that the savings bank was hard pressed, owing to the fact that it was not a member of the Federal Reserve Bank, and could not discount paper, like a national bank; but that he did not know whether the original note was or was not payable directly to the plaintiff-bank.

In this connection, it may also be said that the cashier of the savings bank agreed with Johnson to protect the Monarch Company by placing a credit in the savings account of the bank in the name of said company in the sum of $10,000, and that said account was not to be used by anyone. The account was so placed, and Johnson felt, and so testified, that, with a guaranty of a deposit on record in the bank on the ledger sheet, the

Monarch Company could not lose.  The plaintiff-bank knew nothing of this arrangement.

I.  Does the evidence sustain the plea of estoppel?  We think not.  Certain facts must be viewed as admitted, or not subject to impeachment.  There can be no question that the note was accommodation paper, and there can be no recovery thereon unless (1) the defendant-maker is estopped to deny its liability, or (2) it may be said that the plaintiff-bank is a holder in due course.  Section 9489, Code of 1924.  There is no evidence of ratification by the company, or that it had knowledge of the execution of the note, except so far, if at all, as it is bound by the act of its president.

The liability of a corporation as an accommodation maker is here involved.  It is the general rule that a corporation organized for the purpose of conducting a specific business described in its articles has no power, either assumed in its organization or necessarily inherent therein or implied therefrom, to become an accommodation maker.  This is predicated on the principle that the rights of stockholders and creditors cannot be jeopardized by unauthorized acts done in the name of the corporation which are wholly foreign to its defined powers, and not incidental or necessary to the carrying out of the purpose of the corporation, as expressed in its charter.  It follows that, unless specially authorized so to do, an officer or agent of a corporation has no power to issue or indorse negotiable accommodation paper in the name of the corporation.  See *First Nat. Bank v. Galloway Bros.*, 193 Iowa 1145; *Thompson v. Des Moines Driving Park*, 112 Iowa 628; *Jacobus v. Jamestown Mantel Co.*, 211 N. Y. 154 (105 N. E. 210); *Bloomingdale v. Cushman*, 134 Minn. 445 (159 N. W. 1078).

In the instant case, therefore, unless the defendant-corporation is bound by what the president of the corporation did, no estoppel exists.

The Monarch Company had no knowledge of the transaction, except what was known by its president.  It received no benefit from the credit extended to the savings bank by virtue of the accommodation note.  The general rule of equitable estoppel does not apply here.  The Monarch Company is not seeking to retain an advantage and repudiate a corresponding obliga-

tion. Under the circumstances of this case, the plaintiff-bank is chargeable with notice that the note of the Monarch Company was accommodation paper. It received the note in a manner not usual or customary in the ordinary course of business. Furthermore, the plaintiff must rely upon the authority of the corporation to issue negotiable paper on the terms of the resolution which plaintiff received at the time that the note of the Monarch Company was received by it. That resolution gave authority to the president *and* secretary, and none others, to issue commercial paper, and only upon the condition that the corporation became a borrower of money. Clearly, the plaintiff-bank knew that it was not extending credit to the maker of this paper, nor does the record disclose that the plaintiff had any reason to believe that the savings bank was securing a loan for and on behalf of the Monarch Company. A transaction of this character must be strictly construed. The note in suit is not signed in conformity to the resolution of authority. With this view of the situation, we hold that the plea of estoppel cannot avail, as against the maker of this note.

II. Is the plaintiff in a position to claim as a holder in due course? There is no occasion for this court at this time to enter the realm of discussion of the frequently debated and

2. BILLS AND NOTES: holdership in due course: payee as holder in due course.

controverted proposition whether the payee of a negotiable instrument may be viewed as a holder in due course, and if so, under what circumstances. See Brannan, The Negotiable Instruments Law (3d Ed.), Sections 49—56. Also, note in *Merchants' Nat. Bank v. Smith,* 59 Mont. 280 (15 A. L. R. 430) ; *Ex Parte Goldberg & Lewis,* 191 Ala. 356 (L. R. A. 1915 F 1157).

In any event, does the plea of *bona fides* in the instant case avail anything to the plaintiff, who is the payee of the note in suit? We answer in the negative. A good and sufficient reason exists. The plaintiff has not sustained the burden which the statute imposes upon it as an alleged holder in due course. Section 9519, Code of 1924.

The note was defective when received by the payee-plaintiff. It did not bear the proper signatures to bind the corporation-maker. The payee was chargeable with notice of this fact by the very language of the resolution of authority placed in

its hands. This in itself precludes the plaintiff's claim of *bona fides,* as it was incumbent on the plaintiff, under its plea, to prove by a preponderance of the evidence that, at the time of the alleged negotiation of the note to plaintiff, it had no notice of any infirmity in the instrument, or defect in the title of the person negotiating it. Section 9512, Code of 1924.

The views expressed herein necessarily result in a reversal of the judgment as to the Monarch Company. Wherefore, the judgment entered as to the defendant Webster City Savings Bank is *affirmed,* and the judgment entered as to the defendant Monarch Company is *reversed.*

STEVENS, FAVILLE, and VERMILION, JJ., concur.