## MITCHELL v. DONAHEY ET AL.

1. **Promissory Note**: FRAUD AND CONSPIRACY IN OBTAINING SIGNATURE OF MAKER. Where plaintiff was prosecuting a suit for damages against two defendants for fraud in imposing upon and selling to him a worthless patent right, and, pending the suit, plaintiff's attorneys entered into an agreement with one of the defendants, whereby he, while pretending to be a defendant, was to assist in the prosecution of the suit, and was to share the amount which should be recovered, and, under such arrangement, said defendant betrayed his co-defendant into executing with him a joint promissory note to plaintiff in settlement of the suit, *held* that plaintiff, if he knew at the time of the conspiracy by which the note was procured, or afterwards knowingly ratified it, could not profit by the transaction, and could not recover on the note as against the betrayed defendant.

2. ——: ——: FRAUD OF ATTORNEY AS AFFECTING CLIENT. In such case, if plaintiff was innocent of the fraud and conspiracy practiced by his attorneys, he would not be bound thereby, and he would be entitled to recover upon the note as against both defendants, unless it should be shown that the suit, in settlement of which the note was given, was founded upon no valid claim, and that the note was thus without consideration.

*Appeal from Washington Circuit Court.*

TUESDAY, DECEMBER 11.

THIS is an action upon a promissory note. There was a trial by jury, and a verdict and judgment for the plaintiff. The defendants appeal. The facts of the case appear in the opinion.

*H. & W. Schofield* and *A. R. Dewey*, for appellants.

*J. F. Brown*, for appellee.

Mitchell v. Donahey et al.

ROTHROCK, J.—I. The note in suit is negotiable in form, and was executed by the defendants to the plaintiff on the 29th day of November, 1880. It is in the sum of $600, with interest at ten per cent., and payable in one year from its date. The defendants admitted the execution of the note. The defendant, Donahey, by his answer charged that as to him the note was without consideration, and was obtained by fraud and a conspiracy entered into and carried on by the plaintiff and his attorneys, and the defendant, Dean.

It appears from the answer of both defendants, and the reply of the plaintiff, that, prior to 1880, the defendant, Dean, claimed to be the proprietor of a patent "hog cholera" medicine, and that a partnership was formed to buy of Dean the right to make and sell the medicine in this state. The plaintiff and defendant, Donahey, were members of this partnership. In forming the partnership, plaintiff gave his negotiable promissory notes to Dean for $750. Dean negotiated these notes, and plaintiff was compelled to pay them. He brought a suit against Dean and Donahey, in which he claimed that the patent right was a worthless fraud, and that, while Donahey pretended that he was entering the partnership, he did not really do so, but was in a partnership or conspiracy with Dean to cheat the plaintiff, and that he received part of the $750 of which the plaintiff was defrauded. He commenced a suit against Dean and Donahey to recover for the alleged fraud. The note now in suit was given in a settlement and compromise of that action. It seems to be tacitly conceded that the patent right was a fraud. At least, it was not claimed to be otherwise by the parties in this action. Donahey claims that while that suit was pending a corrupt agreement was entered into between the plaintiff and his attorneys as one party, and Dean as the other party, by which Dean was released from all liability to the plaintiff, and was to receive a part of the amount which should be recovered of Donahey, in consideration that he

(Dean) would assist the plaintiff to recover of Donahey, and that this contract was carried out, and that Dean did aid and assist the plaintiff in obtaining evidence. Donahey further claims that this agreement was unknown to him, and that the suit was prosecuted by the aid of Dean until a jury was empaneled to try the same, when he was induced by Dean and plaintiff's attorneys to sign the note.

Dean admits that an agreement or contract was entered into between himself and plaintiff and his attorneys, in substance the same as that claimed by Donahey. The plaintiff denies that he entered into any such contract as that alleged by the defendants.

It will thus be seen that the parties complain of each other for fraud, from the commencement of the dealings between them up to the execution of the note in suit. In the first suit the plaintiff claimed that the defendants defrauded him of $750, and in this suit the defendants claim that the plaintiff was a party to a corrupt and fraudulent agreement, by which Donahey was induced to execute the note, supposing that Dean was also liable thereon, when, instead of being liable, he was to receive part of the "plunder," as Dean in his testimony designated it.

The original suit was compromised in November, 1880. The defendants introduced in evidence on the trial in the circuit court the following written instrument:

"JAS. R. MITCHELL  ⎫  In District Court of Jefferson County,
          v.        ⎬  Iowa, on Change of Venue from
M. P. DONAHEY,      ⎪  Washington County.
CHAS. DEAN.         ⎭

"It is hereby agreed that the defendant, Dean, is hereby released from any claim which the plaintiff may have against him in this cause, and for a valuable and good consideration he hereby transfers to Dean thirty per cent of whatever judgment is finally recovered. This July 1, 1880.

"JAS. R. MITCHELL,
"By McJUNKIN & HENDERSON, his Attorneys."

They also introduced in evidence the following written instrument:

"MITCHELL

v.

DOHANEY *et al.*

"Whatever contract my attorneys, McJunkin & Henderson, have made with parties relative to an interest in this judgment, I hereby ratify and affirm.

"JAS. R. MITCHELL."

These instruments were placed in the hands of one Burris, to hold for the parties.

There was evidence to the effect that the signature to the last above instrument was the genuine signature of Mitchell. One witness testified in reference thereto as follows: "I judge it is Mitchell's signature. I am acquainted with his signature." There was other evidence to the effect that, when the compromise and settlement of the action was made by giving the note in suit, this original agreement, by which thirty per cent was to go to Dean, was modified so that Dean was to receive $50 and be discharged, and that the reason of the change was that the original agreement would only be operative in case judgment was recovered. It also appears that Donahey had no knowledge of any of these agreements and negotiations until after the note in suit was given.

Now, while it is true that the plaintiff in his testimony denies that he had any knowledge of the contract with Dean for thirty per cent, and denies that he had any knowledge of the subsequent modification of that instrument, he does not deny that he executed the last above paper, being a ratification of the acts of his attorneys. That paper had reference to some persons who were to have an interest in the judgment, should a judgment be recovered. It does not appear that any contract had been made to which this ratifying instrument could have reference, except the thirty per cent contract with Dean.

The court instructed the jury that, under the pleadings

and evidence, the plaintiff was entitled to a verdict against both of the defendants for the full amount of the note.

The question to be determined is whether this instruction was correct. And the first inquiry is: Suppose the plaintiff knew of the use which it is claimed was made of Dean by plaintiff's attorneys, would that be any defense to the action?. We are very clearly of the opinion that it would have been a complete defense. The original action was not a joint action. If the plaintiff had dismissed it as to Dean, he would have had the undoubted right to employ him in aiding in the prosecution of the suit by all honorable means. But Dean was retained as a party defendant to the end of the litigation, and he was required to sign the note which was the consummation of the compromise, and he was to receive a part of the proceeds when cellected, and was not to pay any part of it. Such a transaction ought not to be sustained. The plaintiff cannot be allowed to use Dean as an instrument to compromise the suit with Donahey, and reward Dean for his services in that behalf, and at the same time pretend to be holding Dean as also liable to him. The relations between Dean and Donahey in that suit were entirely changed by Dean's employment by the plaintiff. But this change was made without Donahey's knowledge, and he made the settlement, being in part, at least, influenced thereto by Dean, and supposing their interests to be identical. It is scarcely necessary to say that a contract obtained by such means is against good morals, and void, and ought not to be enforced. It was Donahey's right to expect the utmost good faith and fairness from Dean, his co-defendant in that action; and, if the plaintiff used Dean to betray Donahey, he ought not to be allowed to profit by such a transaction.

We do not say that the plaintiff knew of the means which were used by his attorneys to effect the settlement, and he may have signed the ratifying instrument without a knowledge that anything unfair or fraudulent had taken place between his attorneys and Dean. But we think all these

Mitchell v. Donahey et al.

questions should have been submitted to the jury. The jury should have been permitted to pass upon the question as to whether the plaintiff was a party to the betrayal of Donahey by Dean, or whether, with knowledge of the corrupt and immoral contract, he ratified it, by signing the ratifying instrument, if he did sign it.

II. But appellants' counsel claim that "the bringing of this action upon the note obtained by the fraudulent acts of his attorneys and his agent is itself a ratification of these fraudulent acts." It is without doubt a ratification of the compromise of the suit, because it is an attempt to enforce the payment of the note given in settlement of the suit. But, if the plaintiff did not know the means used to accomplish the settlement, and took the note, honestly supposing that it was a fair and just compromise of the claim he was pressing against the defendants, we do not think all of the consequences attendant upon an immoral and void contract should be visited upon him. He did not employ counsel for any such purposes.

2. ——: ——: fraud of attorney as affecting client.

In Parsons on Contracts, Vol. 1, 73, it is said: "A principal is liable for the fraud or misconduct of his agent, so far that, on the one hand, he can not take any benefit from any misrepresentation fraudulently made by his agent, although the principal was ignorant and innocent of the fraud, and, on the other hand, if the party dealing with the agent suffer from such fraud, the principal is bound to make him compensation for the injury so sustained; and this, although the principal be innocent, provided the agent acted in the matter as his agent and distinctly within the line of the business entrusted to him."

These rules are surely a correct statement of the law. Applying them to the point now under consideration, what are the rights of the parties? If the plaintiff was innocent, and if he had no agency in the immoral contract, can it be held that he should suffer the loss of any claim he had against the defendants in the original action? We know of

no rule of law that imposes any such hardship. No turpitude attaches to him by seeking to enforce the payment of the note. All that can fairly be claimed is, that he shall not be permitted, by adopting the compromise and settlement, to defraud the defendants, by compelling them to pay a claim which in justice they ought not to pay. In the language above quoted, "if the party dealing with the agent suffer by such fraud, the principal is bound to make him compensation for the injury so sustained." It was, therefore, incumbent upon the defendants to show that they were injured by giving the note. To make this appear, they should have shown that the claim made by the plaintiff in the original action was without merit in law and fact, and that the note was, therefore, without consideration. They did not attempt to make such proof.

If this were the only question in the case, we would affirm it without hesitation. But as we think there was sufficient evidence to submit to the jury the question as to the actual participation of the plaintiff in a grossly immoral transaction, the judgment of the circuit court will be reversed, and the cause remanded for a new trial.

                                        REVERSED.