# THOMPSON *v.* FRANKLIN NATIONAL BANK.

BILLS AND NOTES; FRAUD; PLEADING; AFFIDAVITS OF DEFENSE; STATUTE
    OF FRAUD; BANKRUPTCY; PREFERENCES.

1. Where a bank receives a promissory note from the maker before maturity, payable to itself, and containing the name of a third party, who had placed his name on the back for the accommodation of the maker, as security for a present or pre-existing indebtedness due to the bank from the maker, the bank becomes a holder for value in due course, and the liability of the third person is that of an indorser; and in an action by the bank against the indorser it is no defense that the maker procured his indorsement by fraud, in the absence of anything to show that the bank had notice of the alleged fraud. (Citing secs. 1329, 1333, 1368, and 1371, D. C. Code, 31 Stat. at L. 1399, 1402, 1403, chap. 854, negotiable instruments act.)

2. Averments in an affidavit of defense in an action on a promissory note, that the plaintiff is not a holder for value in due course, and that the plaintiff is not the legal owner of the note, are insufficient, in the absence of facts which, if proven, would support these general averments.

3. Where the maker of a promissory note payable to a bank, and indorsed by a third person, deposits the note with the bank as collateral security for another note made by the same maker, and also payable to the bank, and given for a debt due by the maker to the bank, the note so deposited as collateral security is not a promise to answer for the debt of the maker to the bank, and therefore unenforceable by the bank against the indorser under the statute of frauds.

4. If the taking by a bank of an indorsed promissory note as security for an existing indebtedness due from the maker, who afterwards is adjudged a bankrupt, is a preference under the bankruptcy act, that fact affords no defense in an action by the bank against the indorser.

No. 2906.   Submitted April 5, 1916.   Decided May 1, 1916.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, entered for

want of sufficient affidavit of defense in an action on a promissory note.                                                                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This action was brought in the supreme court of the District of Columbia by the Franklin National Bank, appellee, against appellant, John W. Thompson, as indorser on the following negotiable promissory note:

Washington, D. C., Oct. 1, 1914.

Ninety days after date I promise to pay to Franklin National Bank or order Forty-two hundred Dollars with interest at the rate of 6 per cent per annum until paid at the Franklin National Bank, for value received.

J. Wm. Henry.

(Indorsed:)

Benj. Woodruff.

John W. Thompson.

The plea of general issue was filed, and by leave of court a substituted affidavit of merit was filed by plaintiff. Without change of plea, defendant filed a substituted affidavit of defense, whereupon, on motion of plaintiff, judgment was awarded against defendant for want of a sufficient affidavit of defense under the 73d rule of the court below. From the judgment defendant appeals.

The affidavit of merit avers demand, dishonor, and notice. From the affidavit of defense it appears that, prior to the date of the note in suit, plaintiff was a heavy creditor of the banking and stock brokerage firm of Lewis Johnson & Company, of which the maker of the note, Henry, and the first indorser, Woodruff, were members. It also appears that plaintiff placed with Johnson & Company an order for the purchase of certain corporate stock of the total value of $5,523.75, which sum it advanced. By reason of the failure of Johnson & Company to deliver the stock as agreed, because, as averred, the firm was

in failing circumstances, plaintiff entered into a further arrangement with said firm to secure fifty shares of Southern Pacific Railway stock. In pursuance of this agreement plaintiff advanced the sum of $4,200, with which the stock was purchased by Johnson & Company, and delivered to plaintiff, as appears from the books of the company, and the company's account was, in turn, charged with this amount on the books of plaintiff bank.

On October 1, 1914, Johnson & Company executed and delivered to plaintiff its collateral note for $4,200, payable on demand. The note provided, among other things, that all "securities in hands of holder, whether pledged or left with holder for collateral or safekeeping, shall stand as one general continuing collateral security for the whole of said obligation, so that the deficiency on any one shall be made good from the collateral for the rest, * * * and empowers the holder of this note, at option of holder, to at any time appropriate and apply to payment of this note, or any other direct or contingent obligation for liability of undersigned, whether now existing or hereafter arising, any and all moneys now or hereafter in the hands of said holder, on deposit or otherwise, to credit of or belonging to undersigned, whether said obligations and liabilities are due or not due." The note in suit was described in the collateral note as one of the securities held as collateral therefor.

Defendant avers in his affidavit that his indorsement was procured by the fraudulent representations of the maker, Henry, but nowhere avers that plaintiff had notice of the alleged fraud. He also avers that shortly after the date on which the note was executed, Henry, the maker of the note, Woodruff, the first indorser, and Johnson & Company, were individually and as a firm adjudged bankrupts, and "that said firm and each of said members thereof were hopelessly insolvent on and prior to October 1, 1914, although said adjudication in bankruptcy did not occur until November 16, 1914."

*Mr. William E. Davis* and *Mr. George H. Lamar,* for the appellant:

1. Definition of "value," "bearer," and "indorsement," D. C. Code, 1304. Defenses reserved to original parties on "delivery." D. C. Code, 1320; *Herdman* v. *Wheeler* [1902] L. R. 1 K. B. 361, 373; *Sublette* v. *Brewington,* — Mo. App. —, 122 S. W. 1150.

2. Possession by maker imports that indorsement was for accommodation. *Oppenheim* v. *Simon Reigal Cigar Co.* 90 N. Y. Supp. 355.

3. Warrant of indorsement runs only to holder in due course. D. C. Code, 1370; *Bruck* v. *Lambeck,* 118 N. Y. Supp. 494.

4. Denial of negotiation, discount, and value are statements of fact, and not conclusions of law. *Rogers* v. *Martin,* 95 N. Y. Supp. 49.

5. Where the facts shown have any tendency to show bad faith, the question is one of fact. *McNight* v. *Parsons,* 136 Iowa, 390, 396, 401; *Montrose Sav. Bank* v. *Claussen,* 137 Iowa, 73.

6. Bank cannot become holder for value by book credits only, or where considerations match and status remains unchanged. *National Bank* v. *Foley,* 103 N. Y. Supp. 553; *Hathaway* v. *Delaware Co.* 185 N. Y. 368, 13 L.R.A.(N.S.) 273, with note; *Thompson* v. *Sioux Falls Nat. Bank,* 150 U. S. 231, 244; *Hodge* v. *Smith,* 130 Wis. 326.

7. Instrument tainted with fraud in its inception throws burden on holder to affirmatively show good faith. *McNight* v. *Parsons,* 136 Iowa, 390, 396.

8. Affidavit of defense is not a plea. *Booth* v. *Arnold,* 27 App. D. C. 287; *Perry* v. *Kransz,* 166 Ill. App. 1.

9. Plea of non assumpsit puts in issue the execution of the instrument, and puts the plaintiff on proof of all his necessary allegations. *Keyser* v. *Pickerell,* 4 App. D. C. 198, 203; *Craig* v. *Missouri,* 4 Pet. 410.

10. Statute of frauds is a rule of substantive law, not of pleading. *Owen* v. *Riddle,* 79 Atl. 886 (N. J., 1911).

11. Under plea of non assumpsit, or other plea of general issue which denies the obligation, a special plea of statute of frauds is not necessary. *Dumphy* v. *Ryan,* 116 U. S. 491; *May* v. *Sloane,* 101 U. S. 231; *Morgart* v. *Smonse,* 103 Md. 463; *Schultz* v. *Hunter,* 174 S. W. 179 (Mo. App. 1915).

12. It is not necessary to plead the statute where proof showed different contract from the one alleged or fairly fore-shadowed. *Burmin* v. *Simon,* 110 N. Y. Supp. 267; *Taylor* v. *Howard,* 126 Pac. 423; *Boston Duck Co.* v. *Dewey,* 72 Mass. 446.

13. See also *Bailey* v. *District of Columbia,* 4 App. D. C. 356; *Bank of Monongahela Valley* v. *Western,* 159 N. Y. 201, 45 L.R.A. 547; *Blennerhassett* v. *Sherman,* 105 U. S. 100; *Booth* v. *Arnold,* 27 App. D. C. 287; *Bowman* v. *Van Kuren,* 29 Wis. 209; *Bradshaw* v. *Miners Bank,* 81 Fed. 902, 904; *Brown* v. *Ohio Nat. Bank,* 18 App. D. C. 598; *Buchanan* v. *Smith,* 83 U. S. 277; *Campbell* v. *Fourth Nat. Bank,* — Ky. —, 126 S. W. 114; *Re Chandler,* 184 Fed. 887; *Codens* v. *Middleton,* 118 Pa. 622; *Crompton* v. *Perkins,* 65 Md. 22–25; 20 Cyc. p. 258, par. C (note 97); Code, D. C. sec. 1117; Code, D. C. secs. 1334, 1346, 1353, 1356; Code, D. C. sec. 1359; Code D. C. sec. 1362; *Dobbins* v. *Thomas,* 26 App. D. C. 157; *Farmers & C. Nat. Bank* v. *Nixon,* 45 N. Y. 762; *Fowler* v. *Brantley,* 39 U. S. 318; *Gleason* v. *Hocke,* 5 App. D. C. 1; *Goodman* v. *Simonds,* 20 How. 367; *Goshen Nat. Bank* v. *Bingham,* 118 N. Y. 349; *Grafton* v. *Cummings,* 99 U. S. 100; 23 Harvard L. Rev. p. 479; *Hocker* v. *Brown,* 81 Mo. 68; *Israel* v. *Gale,* 174 U. S. 391–394; *Kirkpatrick* v. *Muir-head,* 16 Pa. 117, 124; *Lawrence* v. *Hammond,* 4 App. D. C. 467; *Leatherbee* v. *Bernier,* 182 Mass. 507; *Lewis* v. *Wood,* 153 Mass. 321; *Marion County* v. *Clark,* 94 U. S. 278, 285; *Medcalf* v. *Brown,* 77 Ind. 476; *Meyers* v. *Davis,* 13 App. D. C. 361; *Mosby* v. *Leeds,* 3 Call. (Va.) 439; *Olds Wagon Works* v. *Bank of Louisville,* 10 Ky. L. Rep. 235; *Oppenheim* v. *Simon Royal Cigar Co.* 90 N. Y. Supp. 355; *Ordeman* v. *Lawson,* 49 Md. 135–156; *Perkins* v. *Brown,* 115 Mich. 41; *Potomac Laundry Co.* v. *Miller,* 26 App. D. C. 230; *Pumphrey*

v. *Bogan,* 8 App. D. C. 449; *Rham* v. *Klerner,* 99 Va. 10–14; *Sexton* v. *Dreyfus,* 219 U. S. 339; *Shawnee Co.* v. *Hurley,* 169 Fed. 92, 94; *Shade* v. *Boutin,* 63 App. Div. 537–539; *Smith* v. *Sac County,* 11 Wall. 139; *Southard* v. *Porter,* 43 N. H. 379; *St. Clair* v. *Lusby,* 12 App. D. C. 161; *Strauss* v. *Henry,* 7 App. D. C. 289; *Totten* v. *Bucy,* 57 Md. 446–452; *Re Troy, etc. Shirt Co.* 136 Fed. 428; *Vorce* v. *Rosenberry,* 12 Neb. 448, 450; *Waddell* v. *Howell,* 19 Wend. 170; *Wright* (Ohio) 438; *Wyman* v. *Gray,* 7 Harr. & J. 409.

*Mr. S. McComas Hawken, Mr. George F. Havell* and *Mr. John Ridout* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

It is contended that plaintiff is not a bona fide holder for value in due course of business. It is well at the outset to get the status of defendant fixed with relation to this transaction. There is no contention that any fraud was perpetrated upon the maker, and the fraud which the defendant avers was perpetrated upon him by the maker in securing his indorsement was not brought to the knowledge of plaintiff. Defendant's position, therefore, is fixed by the negotiable instruments act (D. C. Code, sec. 1371 [31 Stat. at L. 1403, chap. 854]) as follows: "Where a person places his indorsement on an instrument negotiable by delivery, he incurs all the liabilities of an indorser." A bona fide holder of a negotiable instrument for a valuable consideration is defined in the early case of *Swift* v. *Tyson,* 16 Pet. 1, 15, 10 L. ed. 865, 870, as follows: "There is no doubt that a bona fide holder of a negotiable instrument, for a valuable consideration, without any notice of facts which impeach its validity, as between the antecedent parties, if he takes it under an indorsement made before the same becomes due, holds the title unaffected by these facts, and may recover thereon, although, as between the antecedent parties, the transaction may be without any legal validity. This is a doctrine so long and so well established, and so essential

to the security of negotiable paper, that it is laid up among the fundamentals of the law, and requires no authority or reasoning to be now brought in its support. As little doubt is there, that the holder of any negotiable paper, before it is due, is not bound to prove that he is a bona fide holder for a valuable consideration, without notice; for the law will presume that, in the absence of all rebutting proofs, and therefore it is incumbent upon the defendant to establish by way of defense satisfactory proofs of the contrary, and thus to overcome the prima facie title of the plaintiff."

The fact that the note has not been negotiated by the payee is of no importance, since defendant stands in the relation of an indorser, his liability as indorser being fixed by sec. 1368 of the Code, as follows: "Where a person not otherwise a party to an instrument places thereon his signature in blank before delivery, he is liable as indorser in accordance with the following rules: First. If the instrument is payable to the order of a third person he is liable to the payee and to all subsequent parties." Here the note was payable to plaintiff, "a third person," and defendant's liability to the bank, as payee, in the absence of a proper defense, would seem to be established.

The note seems to have been given plaintiff by Henry as an accommodation to secure the note of Johnson & Company. As such, he signed the note as maker as an accommodation to Johnson & Company, and not to plaintiff. Again, the Code (sec. 1333 [31 Stat. at L. 1399, chap. 854]) declares the liability of an accommodation maker or indorser as follows: "An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder, at the time of taking the instrument, knew him to be only an accommodation party." That plaintiff would be a holder of the note for value and in due course, if given as collateral security for a present indebtedness, cannot be doubted. The rule is clearly expressed in *Koehler* v. *Dodge,* 31 Neb. 328, 338, 28 Am. St. Rep. 518, 47 N.

W. 913, as follows: "The decided cases establish the rule that where a negotiable promissory note is indorsed and transferred before due, as collateral security for a loan of money then made, the pledgee who takes the paper without notice of any defense is a holder for value in the usual course of business."

It is not clear whether the Johnson & Company note was given to secure a present or a pre-existing indebtedness. From 'the consideration named in the note, and the averments of the affidavit, it would seem to have been given to secure the present indebtedness of $4,200 advanced to secure the purchase and delivery of the Southern Pacific Railway stock ordered and paid for long prior thereto.

But, conceding the contention of defendant that the Johnson & Company note was given for a pre-existing indebtedness, and the note in suit was given as collateral security therefor, his position is not strengthened. Prior to the negotiable instruments act, the Federal courts, as well as the English and Canadian courts, recognized the rule that the holder of a negotiable note held as collateral security for a pre-existing debt is a holder for value in due course of business. The rule is clearly stated in *Brooklyn City & N. R. Co.* v. *National Bank,* 102 U. S. 14, 25, 26 L. ed. 61, 64, as follows: "According to the general concurrence of judicial authority in this country, as well as elsewhere, it may be regarded as settled in commercial jurisprudence, there being no statutory regulations to the contrary, that where negotiable paper is received in payment of an antecedent debt; or where it is transferred, by indorsement, as collateral security for a debt created or a purchase made at the time of transfer; or the transfer is to secure a debt not due, under an agreement, express or to be clearly implied from the circumstances, that the collection of the principal debt is to be postponed or delayed until the collateral matured; or where time is agreed to be given, and is actually given, for a debt overdue, in consideration of the transfer of negotiable paper as collateral security therefor; or where the transferred note takes the place of other paper previously pledged as collateral security for a debt, either at the time such debt was contracted

Vol. XLV.—15.

or before it became due,—in each of these cases the holder who takes the transferred paper, before its maturity, and without notice, actual or otherwise, of any defense thereto, is held to have received it in due course of business, and, in the sense of the commercial law, becomes a holder for value, entitled to enforce payment, without regard to any equity or defense which exists between prior parties to such paper. * * * Our conclusion, therefore, is that the transfer, before maturity, or negotiable paper, as security for an antecedent debt merely, without other circumstances, if the paper be so indorsed that the holder becomes a party to the instrument, although the transfer is without express agreement by the creditor for indulgence, is not an improper use of such paper, and is as much in the usual course of commercial business as its transfer in payment of such debt. In either case, the bona fide holder is unaffected by equities or defenses between prior parties, of which he had no notice. This conclusion is abundantly sustained by authority." The rule thus announced is affirmed in *American File Co.* v. *Garrett,* 110 U. S. 288, 294, 28 L. ed. 149, 152, 4 Sup. Ct. Rep. 90, where the case of *Swift* v. *Tyson,* 16 Pet. 1, 15, 10 L. ed. 865, 870, is cited with approval. This holding is in line with the great trend of decision in the States, as the result of an apparent effort on the part of the States to conform to the Federal rule, and thereby promote uniformity in different jurisdictions.

But since the adoption of the negotiable instruments law, even in States where the rule was formerly to the contrary, it is now held that one who holds a negotiable note taken before maturity as collateral security for a pre-existing debt is a holder for value. *Voss* v. *Chamberlain,* 139 Iowa, 569, 19 L.R.A. (N.S.) 1106, 130 Am. St. Rep. 331, 117 N. W. 269. Indeed, the negotiable instrument act itself (D. C. Code, sec. 1329 [31 Stat. at L. 1399, chap. 854]) defines value as "any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value, and is deemed such, whether the instrument is payable on demand or at a future time."

Many of the equitable defenses open to the indorser of negotiable paper have been swept away by the negotiable instru-

ments act. When a person indorses a negotiable note in blank, and sends the instrument forth into commercial channels, stamped with all the indicia of commercial paper, negotiable by indorsement or delivery, the mere genuineness of his signature is sufficient, prima facie, to establish liability. The payee named in the instrument, taking a note from the maker, when indorsed, for a valuable consideration, without notice of facts which impeach its validity between the maker and indorser, is a bona fide holder for value, in due course, and holds his title unaffected by these facts, and may recover from the indorser, although as between the maker and indorser the transaction is without legal validity. The error in which counsel for defendant have fallen is in treating the relation of the parties as that of maker and payee, while the true relation is that of indorser and indorsee. The payee in this instance stands in the same relation to defendant as would the last indorsee of the note, without notice of infirmity, had the note been negotiated a dozen times, and the last indorsee were here suing the defendant.

With the payee occupying the position of an indorsee, the case is greatly simplified, since no attempt has been made in the affidavit of defense to impute notice to plaintiff of the alleged fraud perpetrated upon defendant by Henry, the maker. Mere averments in an affidavit of defense of general defenses, without stating the facts upon the proof of which it is hoped to sustain the defenses so stated, are insufficient. So, here, the averments that plaintiff is not a holder for value in due course, and that plaintiff is not the legal owner of the note, are insufficient, in the absence of facts set forth in the affidavit, which, if proven, would support these general defenses. The purpose of affidavits of merit and defense is to so array the facts in support of the issues before the court that, if possible, the expense and delay of a trial may be avoided. The affidavits, therefore, must set forth the facts in support of the pleadings.

It is contended by defendant that the note in suit was given by Henry as a special promise to answer for the debt of Johnson & Company, and the action, therefore, is barred by the statute of frauds. If the note had been given directly to satisfy the debt of Johnson & Company, without reference in the note

itself to the purpose for which it was given, as between the maker and plaintiff, the long array of authority cited in defendant's brief would have some bearing. But that is not this case. Here, the note was made and put up as collateral security for a note executed by Johnson & Company for a debt due plaintiff, the payee in both notes. The law, as we have observed, regards the holder of such a note, without notice of infirmity, as a holder for value in due course. The statute of frauds is, therefore, without application to this case.

Of even less merit is the contention of defendant that plaintiff bank in taking the Johnson & Company note acted in bad faith and in violation of the bankruptcy law, and, inasmuch as plaintiff could only acquire title to the note in suit through the Johnson & Company note, a defense is thus afforded defendant. If the bankruptcy act has any application here, it could, at most, reach the transaction between plaintiff bank and Johnson & Company to the extent, not of affecting the liability of Johnson & Company to plaintiff, but of declaring plaintiff a preferred creditor, which could only be asserted by the trustee in bankruptcy, and could in no way affect plaintiff's position as a bona fide holder for value of the note in suit.

The judgment is affirmed with costs.        .        *Affirmed.*

An application for a writ of error from the Supreme Court of the United States was denied by this court June 12, 1916, and an application to that Court for the writ of certiorari was denied November 3, 1916.