WABASH VALLEY TRUST COMPANY *v.* FISHER.

[No. 27,723. Filed May 6, 1942.]

*H. K. Cuthbertson,* of Indianapolis, for appellant.
*Harry M. Stitle, Jr.,* of Indianapolis, for appellee.

SHAKE, C. J.—The appellant failed in a suit on a promissory note in which the appellee answered no consideration. The undisputed facts and the evidence most favorable to the judgment were as follows: About June 30, 1937, the appellee executed a note, complete and regular on its face, for $1,500, payable to the appellant, and due on call or within 90 days. The appellee placed the note in the hands of a stock salesman with whom he was dealing on the condition and with the understanding that he was to hold the same until certain corporate shares were delivered to the appellee after which the note was to be negotiated to obtain funds to pay for the stock. The salesman, immediately thereafter, discounted the note to the appellant without endorsement and without the appellee's knowledge or consent and obtained therefor a cashier's check or draft payable to a third party. The appellant had no knowledge or notice of any defenses to the note. The appellee did not receive the stock, or any other consideration for the note.

There was other evidence which, though some of it was disputed, throws light on the transactions. The salesman testified that his instructions from the appellee were to sell or discount the note and deliver the proceeds to the corporation in payment for the stock which the appellee desired to purchase. This is corroborated by the fact that the cashier's check or draft issued by the appellant for the note found its way into the hands of the corporation, of which, incidentally, the appellee was, at the time, a director. Some time after the note was delivered to the salesman, he said he had a conversation with the appellee, who stated that he had not received the stock. The salesman stated that when, subsequently, the stock was offered to the appellee he refused to accept it because the company was in finan-

cial difficulties. It also appears that more than five months after the execution of the note and while it was in the hands of the appellant the appellee received a letter from a representative of the company in which specific reference was made to the note and the appellee was advised that it would be taken care of as soon as the refinancing of the company was consummated.

There was no plea of *non est factum* and the execution of the note was, consequently, not in issue. § 2-1033, Burns' 1933, § 137, Baldwin's 1934. The salesman must be regarded as the agent of the maker and the delivery of the note to the appellant was complete, notwithstanding the agent's violation of his duty to his principal. *Galvin* v. *Syfers* (1899), 22 Ind. App. 43, 52 N. E. 96. The only troublesome question is whether, under the facts, the appellant was a holder in due course, as defined in § 19-402, Burns' 1933, § 12869, Baldwin's 1934. If it was, the appellee's defense was unavailable.

There is a decided conflict in the authorities of those jurisdictions which like Indiana have adopted the Uniform Act as to whether the payee named in a negotiable instrument may be a holder in due course. 8 Am. Jur., Bills and Notes, § 375, p. 112. The cases are collected and digested in the following annotations: 15 A. L. R. 437, 21 A. L. R. 1365, 26 A. L. R. 769, 32 A. L. R. 289, 68 A. L. R. 962, and 97 A. L. R. 1215. The decisions seem to agree upon the proposition that a negotiation to the payee is required in order that he may be a holder in due course. The disagreement results from a divergence of views as to whether there may be said to have been a negotiation when the instrument did not come to the payee from one in whose hands it was already an obligation. So far as we are advised,

this question has not heretofore been considered by the courts of review in this State.

The problem is complicated by the terms of § 30 of the act, which provides that, "An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer, it is negotiated by delivery; if payable to order, it is negotiated by the indorsement of the holder completed by delivery." § 19-301, Burns' 1933, § 12847, Baldwin's 1934. There seems to be no doubt but that prior to the adoption of the Uniform Negotiable Instruments Law a payee might under some circumstances be a holder in due course. *Lucas* v. *Owens* (1888), 113 Ind. 521, 16 N. E. 196. *Boston Steel & Iron Co.* v. *Steuer* (1903), 183 Mass. 140, 97 Am. St. Rep. 426, 66 N. E. 646. It has been said that the Uniform Negotiable Instruments Law is declaratory of the law merchant. *Paxton* v. *Miller* (1936), 102 Ind. App. 511, 200 N. E. 87. If so, the language employed should be given its common-law meaning. *Truelove* v. *Truelove* (1909), 172 Ind. 441, 86 N. E. 1018, 88 N. E. 516, 27 L. R. A. (N. S.) 220, 139 Am. St. Rep. 404.

We are inclined to the view expressed by the Montana Supreme Court in the case of *Merchants' Nat. Bank* v. *Smith et al.* (1921), 59 Mont. 280, 296, 297, 196 P. 523, 527, 528, 15 A. L. R. 430, 436, where that court summarized its conclusions as to the proper construction of § 30 in the following language:

"... It is upon the last sentence of the section (30) that the courts which hold that the change has been wrought base their conclusions—conclusions which can be justified only by assuming that the last sentence is a part of the definition of the

term 'negotiated,' but that it is not seems to us certain.

"The first sentence of the section is complete in itself, and expresses the meaning of the term 'negotiated' as it was used in the law-merchant. . . .

"The last sentence of section 30 was manifestly intended only to describe the method by which one holder may pass title to another, but was not intended to define the exclusive methods by which negotiation can be accomplished. In other words, it was never intended by the Act to place the payee in a worse position than he was before it was adopted. . . .

"It seems necessary, in order to harmonize the several provisions of the Act, to hold that the complete definition of 'negotiated' is contained in the first sentence of section 30, and that a payee who has taken a note complete and regular upon its face, before it was overdue, and for value and in good faith, may qualify as a holder in due course, and *prima facie* is such. . . ."

The same conclusion may be reached by another line of reasoning. We refer to the application of the common-law doctrine of estoppel upon which statutes establishing the rights of holders in due course are based but which may be applied alike to all contract obligations, non-negotiable as well as negotiable. The rule is that, whenever one of two innocent parties must suffer by the acts of a third he who has enabled the third person to occasion the loss must sustain it. *Preston* v. *Witherspoon* (1887), 109 Ind. 457, 9 N. E. 585, 58 Am. Rep. 417; *Larue* v. *American, etc., Engine Co.* (1911), 176 Ind. 609, 96 N. E. 772.

*Deardorff and Others* v. *Foresman* (1865), 24 Ind. 481, 499, is an exhaustive case in point. The factual background is stated abstractly in the syllabus as follows:

"A executed his promissory note, payable to the order of B, and induced C and D to sign the note

as sureties, and redeliver it to him, A, upon the promise that he would procure other persons, named by them, also to execute said note. In disregard of his promise, A delivered the note to B without procuring the additional sureties agreed upon."

The court's ultimate conclusion was as follows:

"The surety places the instrument, perfect upon its face, in the hands of the proper person to pass it to the obligee, and the law justly holds that the apparent authority with which the surety has clothed him shall be regarded as the real authority, and as the condition imposed upon the delivery was unknown to the obligee, therefore, the benefit of such condition shall not avail the surety."

The judgment is reversed with directions to sustain the appellant's motion for a new trial.

NOTE.—Reported in 41 N. E. (2d) 352, 142 A. L. R. 486.