COLUMBIA FEDERAL SAVINGS AND
LOAN ASSOCIATION, a corporation,
Appellant,

v.

Johnnie W. JACKSON, a/k/a Johnnie
Jackson, Appellee.

No. 1887.

Municipal Court of Appeals for the
District of Columbia.

Argued Jan. 14, 1957.

Decided April 24, 1957.

Irving Turner, Washington, D. C., for appellant.

James T. Barbour, Jr., Washington, D. C., for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

The appellant, a Savings and Loan Association (hereinafter referred to as the Association) sued appellee on a promissory note signed by the latter as maker and payable to the Association. The transaction underlying the signing of the note was as follows:

On October 19, 1954, the appellee, an illiterate who was unable to read but capable of signing his name, was approached by representatives of the Gibson Builders and PreFab Agency (hereinafter called Gibson) who persuaded him to sign a contract for the installation of an aluminum roof on his residence for the sum of $978. Four instruments previously obtained by Gibson from the Association consisting of a credit application addressed to the Association for a Federal Housing Authority guaranteed property-improvement loan, a promissory note naming the Association as payee in the sum of $1,124.50 payable in thirty-six monthly installments of $31.24, a borrower's authorization certificate, and an F.H.A. Title I completion certificate were submitted to appellee for his signature along with a contract for the work. The difference between the contract price and the face amount of the note represented finance charges of the Association.

Appellee informed the Gibson representatives of his inability to read and stated that he wanted to know what he was signing. He testified that no explanation was offered other than that he was signing a contract for the roof and no reference was made to the note or other documents. His testimony as to the signing of the note was as follows:

"Q. Now, did you ask him to read this [the note] to you? A. When the first—when he first start I asked him to read all the paper, read the papers. I didn't know what the thing was, what is the contract for.

\* \* \* \* \* \*

"Q. He didn't read anything at all? A. Not anything.

"Q. But you signed it anyway? A. Well, he asked me to sign it. I signed that for the contract. I didn't sign that for nothing else."

He further testified: "He put three or four [documents] down there and I signed 'em, and I wanted to get away from there. I wanted them to go because I had something else to do; I was in a hurry." Later that evening appellee took the contract to a neighbor, in whom he frequently confided, for the purpose of having the instrument read to him and upon learning the nature of the contract, attempted to cancel it.

Following the execution of the instruments, Gibson submitted them to the Association; it approved the financing of the roof installation, advanced the contract price to Gibson, and accepted the note made payable to it as payee.

The installation of the roof was completed on November 2, 1954, and on December 9, 1954, prior to the date his first monthly installment was due, appellee went to the office of the Association and complained that the roof was leaking. None of the installments were ever paid and the Associa-

tion brought this action to recover on the note. Appellee defends on the ground of fraud in the inception or inducement, or both. The fraud alleged is attributed solely to Gibson or his representatives and is not imputed to the Association. Fraud was the only issue submitted to the jury which returned a verdict for the appellee.

In the course of the trial, appellant introduced evidence indicating that though appellee was an illiterate, he had previously engaged in business transactions involving promissory notes and possessed some common business knowledge.

During the proceedings, with approval of the court, the Association dismissed its suit against Gibson as co-defendant and cross-claims between Gibson and the appellee were dismissed.

■ Errors which primarily relate to the denial of requested instructions are alleged by appellant. Instruction number 3, which was denied, stated:

"The court instructs the jury that it is the law in the District of Columbia that a party who takes negotiable paper before due for valuable consideration, without knowledge of any defect of title, in good faith, can hold it against all the world. * * *"

The court, however, specifically charged that inasmuch as the appellant was the payee of the note it could not be a holder in due course.

■ While the question of whether a payee may be such a holder has a history of conflict, the weight of authority supports the view that a payee having fulfilled the necessary requisites may be such a holder,[1] although the question has never been decided in this jurisdiction.[2] Code 1951, § 28–402, Section 52 of Negotiable Instruments Law,[3] provides that a holder in due course is one who takes the instrument under the following conditions: (1) that it is complete and regular on its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; and (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. Under the facts in the instant case, appellant comes within the purview of this section having met the requisites of a holder in due course. The evidence clearly indicates that the Association was not an "immediate party" to the transaction, but received the note from Gibson. It is conceded by appellee that fraud is not attributable to the Association; furthermore appellee neither alleged nor attempted to show privity or agency between Gibson and appellant by which fraud might be imputed to it.

■ There is no doubt that at common law and under the law merchant a payee could be a holder in due course.[4] Since the

1. See Annotations and cases cited therein: 15 A.L.R. 437; 21 A.L.R. 1365; 26 A.L.R. 769; 32 A.L.R. 289; 68 A.L.R. 962; 97 A.L.R. 1215; 142 A.L.R. 489; 169 A.L.R. 1455. For a further detailed discussion of the holdings of various jurisdictions, pro and con, see Beutel's Brannan, Negotiable Instruments Law (7th ed.), § 52, p. 675–691; and Britton, Bills and Notes (1943 ed.), § 122, p. 503–522.

2. Compare and distinguish Key v. Polk, 61 App.D.C. 382, 63 F.2d 358, and Thompson v. Franklin National Bank, 45 App.D.C. 218, certiorari denied, 242 U.S. 637, 37 S.Ct. 21, 61 L.Ed. 540.

3. Code 1951, Title 28, chapters 1–10, includes the same provisions as the Negotiable Instruments Law.

4. Armstrong v. American Exchange National Bank, 1889, 133 U.S. 433, 10 S.Ct. 450, 33 L.Ed. 747; Mitchell v. Donahey, 1883, 62 Iowa 376, 17 N.W. 641; Fairbanks v. Snow, 1887, 145 Mass. 153, 13 N.E. 596, 1 Am.St.Rep. 446; First National Bank v. Union Trust Co., 1909, 158 Mich. 94, 122 N.W. 547, 133 Am.St. Rep. 362.

enactment of the Negotiable Instruments Law, some opposition has been expressed in cases such as this that delivery of the instrument to the payee does not constitute a negotiation in the sense of Code 1951, § 28–301, Section 30, Negotiable Instruments Law, which provides:

> "An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer it is negotiated by delivery; if payable to order it is negotiated by the indorsement of the holder, completed by delivery." ·

Although the question is debatable, we believe the better reasoning and the weight of authority are with that line of cases holding that the last portion of this section was not intended to define an exclusive method of negotiation, and further that this section requires only that the instrument be transferred from a *person* so as to constitute the transferee a holder.[5] This view is consonant with Code 1951, § 28–101, Section 191, Negotiable Instruments Law, stating: " 'Holder' means the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof." We think the trial court erred in instructing that a payee could not be a holder in due course in this instance.

▆▆ Appellee contends, however, that appellant's counsel failed to object to the court's charge on this point as given and is

therefore precluded from raising the issue. While it is true that counsel for appellant vacillated in pressing his contention that his client was a holder in due course, we think that the court was adequately apprised of his position. The proposition in terms was first urged to the court in his motion for directed verdict. His prayers for instructions included a request that the court so rule. Again, in his memoranda, submitted at the court's request, upon motion for judgment N.O.V. or in the alternative for new trial, appellant's counsel introduced points and authorities in support of the proposition with great particularity. Merely because he was not sure of his ground, it cannot be said that counsel blandly agreed with this instruction given by the court.

We think that the status of the Association as a holder in due course went to the heart of the matter and we therefore invoke the well-established principle that the application of rules of procedure should yield where injustice might result, a rule which has been applied even in instances where the question was *neither pressed nor passed upon by the court at any stage of the proceedings in the trial court.*[6]

▆ For the above reasons, the case is remanded for a new trial. In passing, the issues of fraud and negligence, both raised in this appeal, deserve mention in the expectation they will again be raised on a new trial. Where one who signs a promissory note has been deceived as to the character of the instrument, *fraud in the factum*

5. Wabash Valley Trust Co. v. Fisher, 220 Ind. 133, 41 N.E.2d 352, 142 A.L.R. 486; Liberty Trust Co. v. Tilton, 217 Mass. 462, 105 N.E. 605, L.R.A.1915B, 144; Boston Steel & Iron Co. v. Steuer, 183 Mass. 140, 66 N.E. 646, 97 Am.St.Rep. 426; Merchants' National Bank of Billings v. Smith, 59 Mont. 280, 196 P. 523, 15 A.L.R. 430; National Bank of Suffolk v. American Bank & Trust Co., 163 Va. 710, 177 S.E. 229, 97 A.L.R. 1205; Howard National Bank v. Wilson, 96 Vt. 438, 120 A. 889.

6. Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037. See also Ward

v. Anderson, 93 U.S.App.D.C. 156, 208 F.2d 48; Montgomery v. Virginia Stage Lines, 89 U.S.App.D.C. 213, 191 F.2d 770; Shimabukuro v. Higeyoshi Nagayama, 78 U.S.App.D.C. 271, 140 F.2d 13, certiorari denied, 322 U.S. 755, 64 S. Ct. 1270, 88 L.Ed. 1584; Helvering v. Rubinstein, 8 Cir., 124 F.2d 969; Ayers v. United States, 8 Cir., 58 F.2d 607; American Legion Post No. 90 of Village of Mamaroneck v. First National Bank & Trust Co., 2 Cir., 113 F.2d 868; Bullock v. Young, D.C.Mun.App., 118 A.2d 917; Germaine v. Cramer, D.C.Mun. App., 65 A.2d 573; Zindler v. Buchanon, D.C.Mun.App., 61 A.2d 616.

or *fraud in esse contractus* is a real defense, good against even a holder in due course. In this jurisdiction, fraud must be proved by clear and convincing evidence.[7] However, a maker may be estopped by his negligence to raise the question of fraud against a holder in due course, if as an illiterate he has not taken advantage of reasonable means to learn the nature of the instrument or to have it read to him, or if as a literate and reasonably intelligent person he fails to read the instrument.[8] Both the questions of fraud and negligence are generally for jury determination.

Reversed with instructions to grant a new trial.

7. Zoslow v. National Savings & Trust Co., 91 U.S.App.D.C. 391, 201 F.2d 208; Wynne v. Boone, 88 U.S.App.D.C. 363, 191 F.2d 220; Public Motor Service v. Standard Oil Co. of New Jersey, 69 App. D.C. 89, 99 F.2d 124; Nicos v. Cheakalos, D.C.Mun.App., 120 A.2d 70.

8. Zier v. Eastern Acceptance Corporation, D.C.Mun.App., 61 A.2d 106; C.I.T. Corporation v. Panac, 25 Cal.2d 547, 154 P. 2d 710, 160 A.L.R. 1285; Branz v. Stanley, 142 Me. 318, 51 A.2d 192; Williston on Contracts, Rev.Ed., §§ 95 A, 1488; Beutel's Brannan, Negotiable Instruments Law (7th ed.), § 55, p. 758–762; Britton, Bills and Notes (1943 ed.), § 130.