*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CV-1030

CAROLYN MOORE, APPELLANT,

V.

DEUTSCHE BANK NATIONAL TRUST COMPANY, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAR-2580-11)

(Hon. Thomas J. Motley, Trial Judge)

(Submitted March 17, 2015                    Decided September 17, 2015)

*Craig A. Butler* was on the brief for appellant.

*John R. Fischel* and *James A. Sullivan, Jr.*, were on the brief for appellee.

Before WASHINGTON, *Chief Judge*, THOMPSON, *Associate Judge*, and PRYOR, *Senior Judge*.

THOMPSON, *Associate Judge*:    Appellee Deutsche Bank National Trust Company ("Deutsche Bank") purchased the real property located at 54 Rhode Island Avenue, N.W. ("the property"), at a foreclosure sale and then brought a complaint for possession in the Landlord Tenant Branch of Superior Court. In response, appellant Carolyn Moore, a defendant in the Landlord Tenant action,

filed a plea of title and counterclaim against Deutsche Bank, asserting that she was the rightful owner of the property. After a bench trial, the Superior Court (the Honorable Thomas Motley) rejected the plea of title and counterclaim and granted Deutsche Bank a non-redeemable judgment of possession. On appeal, appellant argues (1) that she provided sufficient evidence for the trial court to find that the Deed of Sale that purportedly conveyed her interest in the property was forged; and (2) that she provided sufficient evidence for the trial court to find that the real estate transaction was fraudulent.[1] We affirm the judgment of the trial court.

**I.**

In her testimony at trial, appellant provided the following background information pertinent to her claims of forgery and fraud: She purchased the property in 2003, financing the purchase with a $426,500 mortgage loan from New Century Mortgage Corporation. Thereafter, struggling to make her mortgage payments, she decided to convert the basement of the property into two condominiums that she could sell or use to generate rental income. After speaking with an architect, appellant believed that she needed $300,000 to pay for the

---

[1] Appellant also argues that Deutsche Bank was not a *bona fide* purchaser of the property for value. This is an issue we need not reach.

necessary remodeling and set about obtaining a construction loan or a refinancing of her mortgage, so that she could take this amount out of the equity in the property. She was eventually introduced to Darwin Farmer, who she understood to be a loan officer for Premier Mortgage Funding. Appellant testified that Farmer informed her that she could probably get the loan but that she would need a co-signer; that Farmer also told her that a businessman named Reginald Walker would be willing to co-sign for her, provided that she paid him $100,000; and that she agreed to this arrangement.

On December 20, 2005, appellant attended settlement at the office of Millennium Title & Abstract. The meeting took place in a conference room with only two other people in attendance: Mr. Walker, whom she was meeting for the first time, and a Mr. Nash, a notary. According to appellant's testimony, during the closing, Nash handed documents to her "one or two at a time" and instructed her to sign them. Neither Walker nor Nash gave any explanations or made any representations to her about what each document meant, and she never asked any questions. Although no one prevented appellant from reading the documents, she acknowledged at trial that she signed many of the documents without "reading them completely" and signed others without reading them at all.

In the aftermath of the closing, appellant received checks totaling $78,435.45. Realizing that this amount was far less than she had been expecting, even after the fee to be paid to Mr. Walker, appellant contacted Premier Mortgage Funding, which she believed to be Mr. Farmer's employer, and was informed that the company had no record of her loan. About a month after the closing, having contacted Mr. Walker and demanded an explanation, appellant met him at his attorney's office. Mr. Walker informed her that she had sold him the property, that he had a sales contract with her signature on it, and that she could have the property back for $800,000. At trial, she denied that she had signed a sales contract, testified that she was "absolutely sure" that the signature on the purported sales contract was not hers, and described how the signature on the sales contract differed from her own.[2]

Appellant did acknowledge signing or writing other documents that referred to the transaction that was the subject of the settlement as a sales transaction. For

---

[2] Appellant sued Walker for fraud and eventually settled with him, agreeing to help him cover his $720,000 WMC Mortgage Corporation mortgage on the property by paying him $1815 every month until January 2008, at which point he would transfer title in the property to her, provided she had obtained the financing necessary to pay off his mortgage. Mr. Walker thereafter defaulted on the mortgage (which had been sold to Morgan Stanley and placed into a trust of which Deutsche Bank was the trustee), and Wells Fargo, the loan servicer, foreclosed. The property was sold at auction and purchased by Deutsche Bank.

example, appellant acknowledged that she signed a HUD-1 settlement statement — a standard form she had previously seen at least five times when buying and selling other properties — by placing her signature on a line marked "seller." She admitted that she saw the word "seller" at the time, but testified that she did not intend to sell her home and believed the document was simply "incorrect."[3] Appellant further acknowledged that she executed a "Correction Agreement, Limited Power of Attorney," which she signed above the line that says "seller." She also testified that after the closing, Mr. Farmer dictated the words of a disbursement authorization, which she wrote out in longhand and signed. The authorization states, in part: "*Of the proceeds of the sale* of 54 Rhode Island Avenue NW, Washington, D.C. 20001, please provide [$]100,000 to Reggie Walker[.]" (Emphasis added.) A few days after the closing, appellant signed a second disbursement authorization that similarly began, "I, Carolyn L. Moore, authorize Millennium Title to disburse *the proceeds of the sale* of my property located at 54 Rhode Island Avenue NW as follows[.]" (Emphasis added.)

---

[3] Appellant acknowledged that she also saw that the HUD-1 form indicated that the seller would receive $169,000. Even though she believed she was supposed to receive $300,000 from the refinancing, she did not walk away from the transaction.

Appellant acknowledged that the signature on the deed filed with the Recorder of Deeds, which shows a conveyance of the property to Walker for $800,000, "looks like my signature." She testified, however, that she did not remember signing that document, and her counsel asserted that the signature was either "a Xeroxed copy of her signature . . . or . . . a signature that someone wrote to make it look like hers[.]" Appellant also showed the trial court that an unsigned deed included in a packet of documents that she took home with her after the closing differed from the recorded deed, in that it listed Mr. Walker as the "parties of the first part" and appellant as the party of the second part (whereas the recorded deed listed appellant as the party of the first part and Walker as the party of the second part). The recorded deed also has an irregularity: the notary block purports to acknowledge Mr. Walker's signature, although his signature does not appear on the deed.

In an August 19, 2013, written order, Judge Motley found that appellant did not meet her burden to demonstrate that the deed was forged or altered or that the underlying transaction was fraudulent.

**II.**

On appeal, appellant renews several of the arguments she made in the trial court. She appears no longer to contend that her signature on the deed is a forgery,[4] but argues that the deed recorded in the land records was altered and is a forged document for that reason; that the transaction by which she purportedly conveyed the property to Mr. Walker was fraudulent; and that, for those reasons, the transaction was void *ab initio*, invalidating the interest in the property claimed by Deutsche Bank as well as the interests of the individual (Mr. Walker) and the lenders that preceded Deutsche Bank in the chain of title. Appellant contends that she provided clear and convincing evidence to support her claims and that the trial court therefore erred in ruling that she failed to meet her burden of proof and in rejecting her plea of title.

Appellant first argues that the evidence permitted the trial court to "infer that the blank [i.e., unsigned] deed [contained in the packet of documents that appellant

---

[4]   Even if appellant did intend to pursue that claim, we would reject her challenge to Judge Motley's findings. While Judge Motley acknowledged appellant's testimony that she had no memory of signing any deed, he reasonably found that her lack of memory was "unremarkable" in light of her testimony that she signed some documents at the closing without even reading them. Judge Motley also noted appellant's initial, repeated testimony that the signature on the deed looked like hers; the absence of expert testimony that the signature was a forgery; and the lack of "obvious signs that [appellant's] signature on the Deed of Sale is materially different from her signature on other documents which [she] admitted to signing." Judge Motley reasonably found that all of these factors detracted from the strength of appellant's case.

brought home from the closing] was the deed that was presented to [Ms.] Moore during the 12/20/05 Transaction and that the deed was subsequently forged in order [to] get it recorded[.]" We cannot agree; we discern no error in Judge Motley's determination that the evidence was insufficient to enable appellant to meet her difficult burden of proving that the deed was forged.[5] Judge Motley reasonably found that the unsigned deed in appellant's packet did not compel an inference that she was given that version of the deed to sign at the closing. As Judge Motley recognized, a mistake in the deed could have been found at the closing and a new copy made for signature, with appellant simply "retain[ing] an earlier unsigned draft of the document" that had been included in a packet of copies made for her records. The mistake in the notary block also does not indicate that the deed was forged, because it could have simply been a "clerical error[,]" as the trial court deemed it to be. A clerical mistake of this sort could have easily been made while Mr. Nash (who, appellant testified, did not notarize

---

[5] "[T]here is a 'presumption that a deed is what it purports to be on its face, and one who seeks to establish the contrary has the burden of doing so by clear and convincing evidence.'" *In re Estate of Munawar*, 981 A.2d 584, 587 (D.C. 2009) (quoting *Smart v. Nevins*, 298 A.2d 217, 219 (D.C. 1972)). Clear and convincing evidence is "evidence that will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *Lumpkins v. CSL Locksmith, LLC*, 911 A.2d 418, 426 n.7 (D.C. 2006) (internal quotation marks omitted).

any of the documents in front of her) was notarizing the batch of documents after the closing.[6]

Appellant next argues that she provided sufficient evidence for the trial court to find fraud (both fraud in the factum and fraudulent inducement) by clear and convincing evidence. Again, we disagree. Fraud in the factum is "the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents." *Chen v. Bell-Smith*, 768 F. Supp. 2d 121, 135 (D.D.C. 2011) (quoting *Langley v. FDIC*, 484 U.S. 86, 93 (1987)). Parties alleging fraud in the factum must prove their claim by clear and convincing evidence, and they will be estopped from making such a claim "if as . . . literate and reasonably intelligent person[s they] fail[] to read the instrument." *Columbia Fed. Sav. & Loan Ass'n v. Jackson*, 131 A.2d 404, 408 (D.C. 1957).[7]

---

[6] This mistake in the signed and filed deed's acknowledgment does not otherwise make the deed invalid. The District's curative statute provides that "a defective or improper acknowledgment[,]" D.C. Code § 42-404 (a)(1) (2001), in "[a]ny instrument recorded in the Office of the Recorder of Deeds on or after April 27, 1994, shall be effective . . . unless the failure is challenged in a judicial proceeding commenced within [six] months after the instrument is recorded." D.C. Code § 42-403 (2001). Ms. Moore's claim was brought years after the deed was recorded.

[7] "Successful invocations of the fraud in the factum defense are rare, and only in the most extreme situations have courts of any jurisdiction found a fraud in

(continued…)

The evidence at trial showed that appellant is a college graduate who had engaged in numerous property transactions before the transaction in issue here. She acknowledged in her trial testimony that she had the opportunity to read all the documents that were given to her during the closing, but that she chose to sign many without "reading them completely" and to sign others without reading them at all. As the trial court emphasized, and as described above, by her own admission, she signed or wrote in longhand "numerous [at least four] documents at closing in which she represented that she was 'selling' the property to Mr. Walker." Further, appellant testified that no one told her what the closing documents purported to do, and she provided no evidence that anyone misrepresented the nature of the documents she was signing.[8] We agree with Judge Motley that the weight of the evidence did not support appellant's claim that she signed the closing documents believing that they were refinancing documents. Moreover, even if we assume the contrary *arguendo*, if appellant did not understand the nature of the closing documents, the evidence supports a conclusion

---

(…continued)
the factum defense to be viable." *Chen*, 768 F. Supp. 2d at 135 (internal quotation marks omitted).

[8] The facts of this case are thus unlike those in *Modern Management Co. v. Wilson*, 997 A.2d 37 (D.C. 2010), in which the defendants "told [the plaintiff homeowner] that the sale documents were a 'legal fiction'" and thereby fraudulently induced her to enter into a transaction "three days before her house was scheduled to go into foreclosure[.]" *See id.* at 40-41, 63 n.31.

that her misunderstanding was due to her own negligence, negating any fraud-in-the-factum defense, as the trial court found. *See Chen*, 768 F. Supp. 2d at 126-27, 136 (finding that where plaintiffs believed they were refinancing their home but were actually selling it, there was no fraud in the factum because the college-educated "plaintiffs were fully capable of reading and understanding the deed of sale and the HUD-1 settlement statement" but "chose to sign these documents without reading them").

As to appellant's fraudulent inducement claim, Judge Motley correctly recognized that appellant had the burden to show, *inter alia*, that she relied on misrepresentations about the nature of the transaction when she signed the documents at closing.[9] Judge Motley found "little question that the transaction . . .

---

[9] There are two separate standards that can be applied in a fraudulent inducement case. The first standard enables an individual who signed a contract due to a fraudulent misrepresentation to obtain relief by proving, by clear and convincing evidence, that there was "(1) a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, and (5) an action that is taken in reliance upon the representation[.]" *In re Estate of McKenney*, 953 A.2d 336, 342 (D.C. 2008) (quoting *Park v. Sandwich Chef, Inc.*, 651 A.2d 798, 801 (D.C. 1994)). Alternatively, individuals seeking rescission of a contract (and not damages) need only show, by a preponderance of the evidence, that they were prejudiced by relying on a misrepresentation of material facts (even if the misrepresentation was made innocently and without fraudulent intent). *Estate of McKenney*, 953 A.2d at 342 (citing *Barrer v. Women's Nat'l Bank*, 761 F.2d 752, 757-58 (D.C. Cir. 1985)). For the reasons set

(continued…)

was not a legitimate transaction" (because, for example, "it is highly unlikely that [WMC Mortgage Corporation] would have . . . approved a $720,000 loan" to Mr. Walker when he was to receive a portion of the proceeds as a "co-signer" fee) and recognized that "there is an inference that WMC [Mortgage Corporation] was defrauded[.]" However, Judge Motley was "unable to accept as true and accurate [appellant's] testimony that she believed the documents she was signing were part of a refinancing and not the sale of her property." He therefore rejected appellant's fraudulent inducement claim, as she could not prove that she relied on misrepresentations about the agreed-to transaction when she signed the documents at closing.

We are satisfied that the trial court reasonably found that "[t]he evidence indicating [that] Ms. Moore knew that the transaction was a sale of her property is overwhelming." As Judge Motley highlighted, appellant "did not know the amount that her new mortgage would increase after the refinancing" and "did not know the monthly payments she would be expected to pay[,]" matters that she reasonably would be expected to know about had she intended to undertake a mere refinancing. Moreover, she wrote a disbursement authorization that called for

(…continued)
out in the text that follows this footnote, the evidence did not suffice for appellant to prevail under either standard.

funds to be given to Mr. Walker to cover six mortgage payments. As Judge Motley reasonably observed, "it would be unusual for [appellant as a borrower at a refinancing] to give money to . . . a cosigner[] to pay six months of her mortgage payments." As Judge Motley emphasized, the evidence was also that appellant signed "at least four documents" of which "[e]ven a cursory review" would "lead to the conclusion that the transaction Ms. Moore was engaged in was the sale of 54 Rhode Island Avenue, and not a refinancing." On this record, the court reasonably rejected appellant's claim that she "did not understand that she was selling her home to Mr. Walker."

Accordingly, we discern no reason to disturb the trial court's finding that appellant failed to prove that she relied on a false representation about the nature of the closing transaction. Appellant has "fallen short of proving that a finding of . . . fraud [in the inducement] is mandated by the evidence, or that no impartial trier of fact could reasonably find otherwise." *Allen v. District of Columbia Bd. of Elections & Ethics*, 663 A.2d 489, 496 (D.C. 1995).

## III.

For the foregoing reasons, the judgment of the trial court is

*Affirmed.*